> those cases already decided by the reviewing court in
> which the death penalty has been imposed. Thus, a court
> of appeals need only compare the case before it with
> other cases actually passed on by that court to determine
> whether the death sentence is excessive or
> disproportionate. Similarly, proportionality review in
> this court will be limited to a review of cases we have
> already announced. No reviewing court need consider any
> case where the death penalty was sought but not obtained
> or where the death sentence could have been sought but
> was not.

*State v. Steffen*, 31 Ohio St.3d 111, 123-24, 509 N.E.2d 383 (1987). The court reasoned that only cases which result in a conviction have any use in proportionality review, and that only convictions of a capital crime are relevant for comparison purposes, since they are "so qualitatively different from all others that comparison with non-capital offenses would be a profitless exercise." *Id.*, 31 Ohio St.3d at 123. The court further concluded that the comparison should be limited to cases decided by the reviewing court "since the reviewing court could not possess the requisite familiarity with the particular circumstances of [cases not decided by that court which is] so essential to a determination of appropriateness." *Id.*

In petitioner's direct appeal to the Ohio Supreme Court, petitioner argued that his death sentence was disproportionately severe because no fewer than ten other defendants in the same county were convicted of aggravated murder during the commission of aggravated robbery but were not charged with death specifications. The Ohio Supreme Court, citing *Steffen*, rejected this argument. *Fautenberry*, 72 Ohio St.3d at 443. Applying the statutory interpretation of §2929.05(A) announced in *Steffen*, even assuming that other cases in Hamilton County could have been, but were not,

indicted as death penalty cases, this is simply irrelevant because §2929.05(A) does not require that these cases be considered in the proportionality review.

The system of proportionality review under Ohio law has been upheld against constitutional attack. *See Buell*, 274 F.3d at 369 ("By limiting proportionality review to other cases already decided by the reviewing court in which the death penalty has been imposed, Ohio has properly acted within the wide latitude it is allowed.") Thus, the fact that Ohio does not require its courts to examine similar cases in which death specifications were not charged or life sentences were imposed does not render the Ohio scheme unconstitutional.

However, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution-and, in particular, in accord with the Due Process Clause." *Evitts v. Lucey*, 469 U.S. 387, 401 (1985). Thus, the Supreme Court has left open the possibility that the failure to comply with a state law provision governing proportionality review could potentially "be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Harris*, 465 U.S. at 41.

The Sixth Circuit has recently addressed the question of whether the Tennessee and Kentucky death penalty proportionality review statutes, which are similar to the Ohio provision at issue here, created a liberty interest qualifying for protection under the Due Process Clause. *See Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003)(Kentucky law); *Coe v. Bell*, 161 F.3d 320 (6th Cir.

202

1998)(Tennessee law).  In *Coe*, the Sixth Circuit concluded that no liberty interest was created because the statute merely told the supreme court "what questions it must ask.  It does not tell the supreme court *how* it must do so[.]" *Coe*, 161 F.3d at 352 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989)).  Similarly, in *Bowling*, the court concluded that the Kentucky provision did not create a liberty interest, noting that the Kentucky statute "only explains what the Kentucky Supreme Court needs to consider-similar cases, the crime, and the defendant-it does not tell that court how to make this decision." *Bowling*, 344 F.3d at 521-22.

Likewise, §2929.05(A)(5) simply instructs the Ohio courts to "consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases."  It does not instruct the courts which cases to consider or how to consider those cases. This court concludes that the review of similar cases mandated by §2929.05(A) does not create a liberty interest warranting protection under the Due Process Clause.

However, even assuming that the petitioner does have a due process rights under §2929.05(A), the record demonstrates that the state courts complied with the mandates of that section.  In conducting its proportionality review, the First District Court of Appeals stated:

> Last, we must determine whether Fautenberry's death sentence is appropriate based upon whether it is excessive or disproportionate to the death penalty as it has been imposed in other cases in Hamilton County.  R.C. 2929.05(A); see *State v. Steffen*, [31 Ohio St.3d 111, 509 N.E.2d 383 (1988)].  Our careful review and comparison of such cases result in our holding that the sentence of death imposed upon Fautenberry is neither excessive nor disproportionate.  Accordingly, his sentence of death is

appropriate.

*Fautenberry*, 1994 WL 35023 at *9.  The court of appeals did not indicate which specific cases were used as a basis for comparison; however, the statute does not specifically require that the court include this information in its opinion.

The Ohio Supreme Court conducted its own proportionality review, as required by the statute.  That court stated:

> Finally, we are required, pursuant to R.C. 2929.05(A), to consider whether the sentence imposed in this case was excessive or disproportionate.  We have upheld death penalties in other cases involving aggravated murders which involved the purposeful killing of or attempt to kill two or more persons, *e.g., State v. Lorraine, supra,* 66 Ohio St.3d 414, 613 N.E.2d 212 [1993]; *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622; *State v. Sowell, supra,* 39 Ohio St.3d 322, 530 N.E.2d 1294 [1988]; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; and cases where the aggravated murder was committed in the course of an aggravated robbery, *e.g., State v. Green*, (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253; *State v. Cook* (1992), 65 Ohio St.3d 516, 605 N.E.2d 70; *State v. Brown, supra; State v. Byrd* (1987), 32 Ohio St.3d 79, 512 N.E.2d 611.  Therefore, we find that the sentence of death in this case is neither excessive nor disproportionate.

*Fautenberry*, 72 Ohio St.3d at 446.

In *Proffitt v. Florida*, 428 U.S. 242, 253 (1976), the Supreme Court upheld a proportionality review under Florida law where court "decisions are reviewed to ensure that they are consistent with other sentences imposed in similar circumstances."  In *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001), the Sixth Circuit upheld a proportionality review by the Ohio Supreme Court where that court's opinion included citations to similar cases involving aggravated murders which were a part of a course of conduct

involving a purposeful killing of or attempt to kill two or more persons. The Sixth Circuit, *Id.*, noted that the Ohio Supreme Court's opinion in that case mirrored the state court proportionality review consisting of citations to cases involving generally similar murders which was upheld in *McCleskey v. Kemp*, 481 U.S. 279, 306 (1987).

In this case, the Ohio Supreme Court also listed citations to previous opinions of that court in which the death penalty was upheld in support of its conclusion that the sentence of death in petitioner's case was not excessive or disproportionate. The cases specifically cited included: *State v. Lorraine* (defendant stabbed and killed two elderly victims in their home and stole money and jewelry); *State v. Frazier* (defendant committed two murders and one attempted murder during robbery in victims' home); *State v. Coleman, Brown* (murder of victim was one of six murders committed by defendants in different states); *State v. Sowell* (one murder and one attempted murder during the same transaction); *State v. Green* (single murder by stabbing during a robbery); *State v. Cook* (kidnapping, robbery and murder of one victim); and *State v. Byrd* (robbery and murder of a store clerk). These cited opinions include a description of the circumstances of the offenses and the evidence offered in mitigation concerning the defendants. An examination of these opinions reveals that the circumstances of the offense in this case were equally or even more heinous or egregious than the circumstances found in the cited cases.

The appropriateness proportionality review conducted by the Ohio courts complied with Ohio law and did not deprive the petitioner of his constitutional rights. Petitioner's sixteenth

205

ground for relief is denied.

**J. Eighteenth Ground for Relief**

> Petitioner's eighteenth ground for relief states:
> John Fautenberry's death sentence is constitutionally
> infirm because Ohio's capital punishment system operates
> in an arbitrary and capricious manner.

Petitioner contends in his eighteenth ground for relief and in his traverse, pages 137-147, that the Ohio death penalty scheme is unconstitutional.  On direct appeal, the Ohio courts summarily rejected petitioner's arguments concerning the constitutionality of Ohio's death penalty scheme.  *See Fautenberry*, 72 Ohio St.3d at 443 (citing *State v. Henderson*, 39 Ohio St.3d 24, 528 N.E.2d 1237 (1988); *State v. Poindexter*, 36 Ohio St.3d 1, 520 N.E.2d 568 (1988); *State v. Zuern*, 32 Ohio St.3d 56, 512 N.E.2d 585 (1987); and *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984)); *Fautenberry*, 1994 WL 35023 at *8 (citing *State v. Sowell*, 39 Ohio St.3d 322, 530 N.E.2d 1294 (1988); *State v. Beuke*, 38 Ohio St.3d 29, 526 N.E.2d 274 (1989); *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1988); and *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992)).

As a general matter, the Sixth Circuit has recently rejected the argument that the Ohio death penalty scheme operates in an arbitrary and capricious manner that violates the constitutional guarantees of due process and equal protection.  *See Buell v. Mitchell*, 274 F.3d 337, 367 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000).  The Sixth Circuit noted the Ohio death penalty statutes include the procedures set forth in *Gregg v. Georgia*, 428 U.S. 153, 188-195 (1976) which significantly reduce the likelihood of arbitrary and capricious imposition of the death

penalty. *Buell*, 274 F.3d at 367.

Petitioner argues that the Ohio death penalty scheme is unconstitutional in several respects. His arguments are addressed as follows:

1. **Electrocution as a means of execution has ceased to comply with evolving standards of decency contained in the Eighth Amendment.**

Petitioner's argument that death by electrocution violates the Eighth Amendment is not well taken. In *Gregg v. Georgia*, 428 U.S. 153, 179-82 (1976), the Supreme Court rejected the argument that the death penalty failed to comport with evolving standards of decency. In *Buell*, 274 F.3d at 370, the Sixth Circuit held that death by electrocution did not violate the constitutional prohibition of cruel and unusual punishment. In addition, since petitioner's conviction, Ohio law has been amended, and now provides for the execution of a death sentence by means of lethal injection. *See* Ohio Rev. Code §2949.22(A). Petitioner does not argue that death by lethal injection constitutes cruel and unusual punishment. *See Cooper v. Rimmer*, 358 F.3d 655, 658-59 (9th Cir. 2004)(upholding the constitutionality of lethal injection as a method of execution, and noting that lethal injection is now used by thirty-seven of the thirty-eight states which have the death penalty).

2. **The death penalty is not the least restrictive or most effective means of accomplishing deterrence or isolation or satisfying retribution and therefore violates due process.**

This argument is also foreclosed by *Gregg*, 428 U.S. at 183, 187 (death penalty serves compelling state interests and is not "invariably disproportionate to the crime" of murder). There is no

207

constitutional requirement that the legislature select the least severe penalty possible. *Id.* at 175 *See also Smith v. Mitchell*, 348 F.3d 177, 213 (6th Cir. 2003)(upholding Ohio death penalty scheme against attack that there is no legitimate, compelling state interest in killing a person).

3.   **The Ohio capital punishment scheme allows for the imposition of the death penalty in an arbitrary and discriminatory manner due to the uncontrolled discretion of the prosecutor in the indictment of death penalty cases.**

Petitioner argues that the fact that the prosecutor can decide whether or not to seek a death penalty indictment presents a risk of arbitrary and capricious charging decisions in death penalty cases. However, the Supreme Court in *Gregg*, 428 U.S. at 199, held that a prosecutor's discretion in charging a defendant with a capital crime does not violate the Constitution. As the Sixth Circuit has stated, "these 'discretionary stages' do not implicate the concerns [about arbitrariness, capriciousness, and discrimination] expressed in *Furman v. Georgia*, 408 U.S. 238 (1972)." *Wickline v. Mitchell*, 319 F.3d 813, 824 (6th Cir. 2003). This argument is without merit.

4.   **The Ohio system results in racial discrimination in the imposition of the death penalty.**

Petitioner contends that the death penalty has been imposed in Ohio in a discriminatory manner on African-Americans and those who kill Caucasians.[18]  Petitioner argues that the death penalty is inflicted disproportionately upon African-Americans and those who kill Caucasians as opposed to those who kill African-Americans. He

---

[18]Petitioner falls in the second of these categories. Petitioner's victim, Joseph Daron, was Caucasian, as is the petitioner.

notes that fifty-five percent of the people on death row are minorities. To succeed on this claim, petitioner is required to present "exceptionally clear proof" before this court could infer that the prosecutorial discretion in seeking the death penalty was the product of improper racial motivation. *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987). In *McCleskey*, the Supreme Court concluded that statistics indicating that prosecutors sought the death penalty for seventy percent of African-American defendants with Caucasian victims, but for only nineteen percent of Caucasian defendants with African-American victims, was insufficient to meet this standard.

The Sixth Circuit applied the *McCleskey* standard to the Ohio statistics presented by the petitioner in *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001). The petitioner in that case noted the discrepancy between the percentage of African-Americans in the Ohio population in general (nine percent) compared with the African-American representation on death row (forty-nine percent). The Sixth Circuit concluded that no unconstitutional abuse of prosecutorial discretion had been established, noting:

> Although the racial imbalance in the State of Ohio's capital sentencing system is glaringly extreme, it is no more so than the statistical disparities considered and rejected by the Supreme Court in *McCleskey* as insufficient to "demonstrate a constitutionally significant risk of racial bias affecting the ... capital sentencing process."

*Id.* at 441-42 (quoting *McCleskey*, 481 U.S. at 313). In cases involving statistics similar to those relied on in this case, the Sixth Circuit has consistently rejected constitutional challenges to Ohio's death penalty scheme based upon claims that race plays a part in the application of capital punishment in Ohio. *See, e.g.,*

*Smith*, 348 F.3d at 211 (fact that sixty-two percent of defendants convicted in Hamilton County were African-American, while African-Americans made up only twenty percent of county's population insufficient to establish that death penalty was disproportionately applied to African-Americans); *Greer v. Mitchell*, 264 F.3d 663, 690 (6th Cir. 2001)(holding that petitioner "failed to demonstrate a constitutionally significant risk of racial bias affecting the Ohio capital sentencing process.")

The statistics relied on by petitioner are insufficient to meet his burden under *McCleskey*. The court further notes that the statistics noted by petitioner concerning the percentage of African-Americans on Ohio's death row do not support a finding of impermissible racial bias on the part of the prosecutor in his case, since petitioner is Caucasian.

5. **The Ohio death penalty scheme is deficient because it requires that any presentence investigation or mental evaluation requested by the defendant be submitted to the trier of fact, regardless of whether the information is favorable to the defendant, thereby placing defense counsel in a position of having to choose whether to request an investigation which might reveal information unfavorable to the defense.**

Petitioner attacks the requirement under Ohio Rev. Code §2929.03(D)(1), which requires that any presentence investigation report and mental examination requested by the defendant be submitted to the jury or three-judge panel. Petitioner cites no Supreme Court authority which prohibits this practice. In *Cooey v. Coyle*, 289 F.3d 882, 925-26 (6th Cir. 2002), the court described this argument as "utterly implausible," and went on to state that "we could find no case where the Constitution has been construed as forbidding such a rule." *See also Byrd*, 209 F.3d at 539 (rejecting

210

argument that §2929.03(D)(1) violates defendants' rights to due process and effective assistance of counsel).

In *Frazier v. Mitchell*, 188 F.Supp.2d 798, 838 (N.D.Ohio 2001), the court rejected the petitioner's argument, noting that the disclosure required by §2929.03(D)(1) was similar to the state discovery provision upheld by the Supreme Court in *Williams v. Florida*, 399 U.S. 78 (1970), which conditioned the defendant's right to obtain discovery on disclosure by him of alibi information. *See also Taylor v. Mitchell*, 296 F.Supp.2d 784, 839 (N.D.Ohio 2003)(defendant may constitutionally be required to disclose results of psychiatric examination requested by him)(citing *Buchanan v. Kentucky*, 483 U.S. 402 (1987)).

The disclosure requirement in §2929.03(D)(1) does not violate the Constitution.

**6.    The course of conduct specification contained in Ohio Rev. Code §2929.04(B)(5) is overly broad because there are no limitations or guiding criteria as to what constitutes a course of conduct.**

Petitioner contends that the "course of conduct" component of Ohio Rev. Code §2929.04(A)(5) is unconstitutionally overbroad. Under that section, a defendant who commits aggravated murder is eligible for the death penalty where, "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender."

The Supreme Court has held that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Schall v. Martin*, 467 U.S. 253, 268 (1984). However, petitioner's claim may be construed as arguing that the aggravating circumstance in §2929.04(A)(5) is unconstitutionally vague, in that

211

it fails to adequately inform the trier of fact what must be found to impose the death penalty, thus giving the trier of fact the type of open-ended discretion which was held invalid in *Furman v. Georgia*, 408 U.S. 238 (1972).

In *Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988), the Supreme Court stated that claims for vagueness and overbreadth directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment. Under the rule announced in *Maynard*, the proper focus in determining whether an aggravating circumstance is unconstitutionally vague or overbroad is whether that provision "sufficiently minimiz[es] the risk of wholly arbitrary and capricious action." *Maynard*, 486 U.S. at 362. In *Maynard*, the Court found that an aggravating circumstance provision which referred to "especially heinous, atrocious or cruel" murders was invalid because an ordinary person could honestly believe that every murder is "especially heinous." Similarly, in *Godfrey v. Georgia*, 446 U.S. 420, 428-29 (1980), the Supreme Court concluded that an aggravating circumstance for murders that were "outrageously or wantonly vile, horrible or inhuman" did not adequately channel jury discretion because a person of ordinary sensibility could fairly characterize almost every murder as meeting those criteria.

The Ohio Supreme Court addressed the constitutionality of §2929.04(A)(5) in *State v. Benner*, 40 Ohio St.3d 301, 533 N.E.2d 701 (1988). The court rejected the argument that the "course of conduct" language required a mass murder or more than one murder in the same transaction, and held that the provision could be satisfied by two or more murders committed on different occasions.

212

*Id.* at 304-05 (citing *State v. Beuke*, 38 Ohio St.3d 29, 526 N.E.2d 274 (1988)).  The court further concluded that the specification in §2929.04(A)(5) "is not the type of 'open-ended' statute struck down in" *Maynard* and *Godfrey*.  *Benner*, 40 Ohio St.3d at 707.  The court noted:

> [I]t is clear that no one could reasonably believe that every murder is "part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender."  Thus, we find that the specification in R.C. 2929.04(A)(5) does not give the sentencing court the wide discretion condemned in both *Godfrey* and *Maynard*.  Therefore, we hold that the course-of-conduct specification is not void for vagueness under either the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution.  The language of the statute is definitive and is circumscribed to cover only those situations which it fairly describes.

*Id.*  *See also State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988)(§2929.04(A)(5) is not unconstitutionally vague; the "questioned statute clearly conveys what conduct is at risk.")

This court agrees with the reasoning of the Ohio Supreme Court in *Benner* and finds that the *Benner* court properly applied the law of the United States Supreme Court in reaching the conclusion that the course of conduct specification in §2929.04(A)(5) is not unconstitutionally vague or overbroad.

**7.  The Ohio death penalty scheme is deficient because it does not require the state to prove the absence of any mitigating factors and that death is the only appropriate penalty, thereby failing to provide a method which ensures the proper weighing and consideration of mitigating factors.**

Petitioner argues that the Ohio scheme is unconstitutional because it does not place the burden on the state to prove the lack of mitigating factors.  In *Smith*, the Sixth Circuit rejected this

213

argument, stating that the Constitution contains no such requirement. *Smith*, 348 F.3d at 213-14 (citing *Buchanan v. Angelone*, 522 U.S. 269, 275-76 (1998)). In *Walton v. Arizona*, 497 U.S. 639, 650 (1990), the Supreme Court held that a state law which places the burden of proving mitigating factors on the defendant is not *per se* unconstitutional:

> So long as a state's method of allocating the burdens of proof does not lessen the state's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for lenience.

Under Ohio law, the state bears the burden of proving beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. Since the state can constitutionally impose the burden of proof on the defendant to prove mitigation, the state may also be relieved of any obligation to prove the absence of mitigating factors. Petitioner has cited no authority to support his argument that the state should be required to prove that death is the only appropriate punishment. *See Jamison v. Collins*, 100 F.Supp.2d 647, 764 (S.D.Ohio 2000).

**8. The requirement that aggravating circumstances merely "outweigh" mitigating circumstances is unconstitutionally vague and creates a risk of arbitrary and capricious sentencing.**

Petitioner argues that the Ohio scheme is unconstitutional because it only requires that the aggravating factors "outweigh" the mitigating circumstances. While this balancing process may resemble a preponderance standard, the state still bears the burden of proving the existence of the aggravating circumstances beyond a

214

reasonable doubt. Petitioner cites no authority for the proposition that the Constitution requires a state to prove that the aggravating circumstances outweigh the mitigating factors by any particular amount. The Constitution does not require that any particular weight be assigned to aggravating circumstances and mitigating factors, or that the aggravating circumstances substantially outweigh the mitigating factors. For example, in *Proffitt v. Florida*, 428 U.S. 242 (1976), the Supreme Court upheld a statutory scheme which required only that the aggravating circumstances "outweigh" the mitigating factors. This argument is without merit.

**9.  The statutory mitigating circumstances are unconstitutionally vague and leave the jury with too much discretion.**

Petitioner also contends that the statutory mitigating circumstances are unconstitutionally vague and leave the jury (or, in this case, the three-judge panel) with too much discretion. The Supreme Court has held that "the Eighth Amendment does not require States to adopt specific standards for instructing juries on mitigating circumstances." *Buchanan*, 522 U.S. at 274. The absence of particularly defined standards to evaluate the existence of or to balance the relative weight of mitigating circumstances does not render a statutory scheme unconstitutional. *Id*. at 279. "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa v. California*, 512 U.S. 967, 979 (1994).

In *Proffitt*, 428 U.S. at 258, the Supreme Court upheld a scheme similar to that used in Ohio, which includes specific aggravating circumstances and mitigating factors that are to be

215

weighed at sentencing.  The Court has also approved statutes that did not include specific factors to consider or a specific method of balancing the competing considerations.  *See Franklin v. Lynaugh*, 487 U.S. 164, 172-73 (1988); *Zant v. Stephens*, 462 U.S. 862, 875 (1983).  All that is constitutionally required is that "the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of a death sentence." *Sumner v. Shuman*, 483 U.S. 66, 72 (1987)(quoting *Gregg*, 428 U.S. at 189-90 n. 38).

Ohio's scheme sufficiently enumerates factors that the jury or three-judge panel must evaluate, and a general framework for that evaluation.  Under the Ohio provisions, the death penalty for aggravated murder is prohibited unless at least one of eight aggravating circumstances is specified in the indictment and proved beyond a reasonable doubt.  In the mitigation phase, the defendant has great latitude to go forward with mitigation evidence, including the specific mitigation factors listed in the statute, and the prosecution bears the burden of proving beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.  The trial court also conducts an independent review of the aggravating circumstances and mitigating factors.

The Sixth Circuit has held that the Ohio scheme of weighing aggravating circumstances and mitigating factors meets constitutional requirements.  *See* Buell, 274 F.3d at 367-78.  See *also Smith*, 348 F.3d at 213-14 (rejecting argument that Ohio scheme gives jury too much discretion); *Coleman*, 268 F.3d at 442-43 (Ohio scheme uses "clear and objective standards" that provide the

216

"specific and detailed guidance" required by *Godfrey*).

The Ohio procedures for weighing aggravating circumstances and mitigating factors are not unconstitutional.

**10.  The Ohio scheme is unconstitutional because it requires proof of the aggravating circumstances in the guilt phase of the trial, thereby prohibiting a sufficient individualized determination in sentencing.**

This argument is foreclosed by the decision of the Supreme Court in *Lowenfield v. Phelps*, 484 U.S. 231 (1988). In that case, the Court noted:

> The use of "aggravating circumstances" is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase.

484 U.S. at 244-45. The Sixth Circuit has also indicated its approval of this aspect of Ohio's death penalty scheme. *See Smith*, 348 F.3d at 214; *Coleman*, 268 F.3d at 443.

**11.  The Ohio statutes are unconstitutional because defendants who enter a guilty or no contest plea may secure a dismissal of the death specifications "in the interest of justice" pursuant to Ohio R. Crim. P. 11(c)(3), whereas capital defendants who choose to exercise their right to a jury trial do not have the benefit of this provision, thereby subjecting them to an impermissible risk of death.**

Petitioner argues that the Ohio death penalty scheme imposes an impermissible risk of death on those defendants who exercise their right to a jury trial because they do not have the potential benefit of Ohio R. Crim. P. 11(C)(3). That provision permits the trial judge to dismiss the capital specifications from an indictment "in the interests of justice" when a defendant enters a guilty or no contest plea.

217

Although the Supreme Court has struck down a statutory provision where a guilty plea automatically left the defendant ineligible for the death penalty, *see United States v. Jackson*, 390 U.S. 570 (1968), the Court has never held that it is impermissible to give a defendant who pleads guilty the possibility of avoiding the death penalty, since there is no *per se* rule against encouraging guilty pleas. *See Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978). Under the Ohio rule, one who pleads guilty to an indictment containing a death penalty specification is still eligible for the death penalty. The Sixth Circuit has also upheld the provisions of Rule 11(C)(3). *See Wickline*, 319 F.3d at 824; *Cooey*, 289 F.3d at 924-25 (petitioner offered no authority to support claim that Rule 11(C)(3) impermissibly encouraged guilty pleas in capital cases); *Byrd*, 209 F.3d at 539 (rejecting argument that Rule 11(C)(3) imposes an impermissible risk of death on capital defendants who choose to exercise their right to a jury trial). Rule 11(C)(3) is not unconstitutional.

12. **Ohio Rev. Code §2929.04(B)(7), the catch-all mitigating factor which permits the jury to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death[,]" is capable of being converted into an aggravating factor.**

Petitioner argues that Ohio Rev. Code §2929.04(B)(7), the catch-all mitigation provision, is worded in such a way that the jury could construe it as an aggravating factor supporting the death penalty. The Ohio Supreme Court considered and rejected this argument in *State v. Stallings*, 89 Ohio St.3d 280, 731 N.E.2d 159 (2000). The court noted that to omit the "other factors" language would violate the rule that the sentencer in a capital case must not be precluded from considering any aspect of a defendant's

218

character or record or any circumstances of the offense that the
defendant proffers in mitigation as a basis for a sentence less
than death.  *Id.*, 89 Ohio St.3d at 298 (citing *Skipper v. South
Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104
(1982); and *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)).  The court
concluded:

> The court's reference to the 'any other factors' language
> of R.C. 2929.04(B)(7) simply gave effect to the
> constitutional precept that the jury must be allowed to
> consider any relevant evidence the accused offers as
> mitigating.  The court did not mislead the jury into
> believing mitigating factors were nonstatutory
> aggravating circumstances.

*Id.*

Section 2929.04(B)(7) is clearly grouped in the statute among
the mitigating factors, not within the subsection of the statute
specifying aggravating circumstances.  The three-judge panel in
this case included the §2929.04(B)(7) language with the other
statutory mitigating factors in its opinion of September 25, 1992.
Appx. Vol II, p. 450.  The panel also referred to the petitioner's
drug and alcohol use as being a mitigating factor under the catch-
all provision.  Appx. Vol. II, p. 452.  Later, in weighing the
mitigating factors against the aggravating circumstances, the panel
again classified petitioner's drug and alcohol use and the fact
that he suffers from "low self-esteem and rejection" as mitigating
factors under the catch-all provision.  Appx. Vol. II, p. 454.  The
three-judge panel in this case was fully aware that the catch-all
provision relates to mitigating factors rather than aggravating
circumstances, and that any evidence presented under that provision
should be weighed on the mitigation side of the scales.  Likewise,
a jury, with proper instructions, would not consider any

miscellaneous mitigating information introduced under that section as aggravating circumstances. *See Bonnell v. Mitchell*, 301 F.Supp.2d 698, 746 (N.D.Ohio 2004)("To suggest that jurors being read and given the instructions on statutory mitigating factors would somehow turn the seventh 'catch-all' mitigating factor into an additional non-statutory aggravating factor, defies logic.").

Section 2929.04(B)(7) is not unconstitutional.

**13.  Ohio Rev. Code §2929.04(A)(7) renders persons who commit felony murder automatically eligible for the death penalty, whereas persons who commit aggravated murder with prior calculation and design are not, thereby violating equal protection principles.**

Petitioner argues that Ohio Rev. Code §2929.04(A)(7), the felony murder aggravating factor, is invalid. Petitioner notes that persons who commit felony murder are eligible for the death penalty even though intent to kill or premeditation are not requirements for felony murder, whereas persons who commit intentional and premeditated murder are not eligible for the death penalty. Petitioner also notes that a person who commits felony murder is eligible for the death penalty even where the commission of the felony was merely an afterthought to the murder.

The Supreme Court held in *Tison v. Arizona*, 481 U.S. 137, 158 (1987) that a specific intent to kill is not required in order to impose the death penalty. *See also Coleman*, 268 F.3d at 442 (imposing death for felony murder, even in the absence of proof of premeditation or deliberation, is consistent with the Eighth Amendment); *Greer*, 264 F.3d at 691 (conscious desire to kill is not required in order to impose the death penalty).

The Supreme Court has also rejected the argument that it is impermissible for an aggravating factor to duplicate an element of

220

the crime.  An aggravating factor that repeats an element of the crime is constitutional as long as the jury's discretion is sufficiently narrowed.  *Lowenfield*, 484 U.S. at 235.  Felony murder is defined in the Ohio Revised Code as causing the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism (added effective May 15, 2002), or escape.  Ohio Rev. Code §2903.01(B).

In contrast, under §2929.04(A)(7), an aggravating circumstance exists if the defendant committed felony murder during the course of kidnapping, rape, aggravated arson, aggravated robbery or aggravated burglary, a more narrow list of underlying felonies. The specification in §2929.04(A)(7) also requires either that the defendant was the principal offender in the felony murder, or that he committed the felony murder with prior calculation or design. This narrows the class of death-eligible offenders by ensuring that not all offenders convicted of felony murder are eligible for the death penalty.

The Sixth Circuit has rejected the argument that Ohio's death penalty statute is unconstitutional on the ground that it permits duplication between the aggravating circumstances and an element of the underlying crime.  *See Smith*, 348 F.3d at 214.  The Sixth Circuit has also held that the Ohio statute sufficiently narrows the category of felony murders eligible for the death penalty.  *See Scott v. Mitchell*, 209 F.3d 854, 884-85 (6th Cir. 2000). Petitioner's argument that §2929.04(A)(7) is constitutionally invalid is not well taken.

14.  **Adequate appellate review is undercut by the failure of the Ohio statutes to require the jury or three-judge panel recommending life imprisonment to identify the mitigating factors upon which they relied, thereby providing no basis for comparison with cases in which the death penalty is imposed.**

Petitioner argues that the Ohio scheme results in an insufficient appropriateness or proportionality review because a jury or three-judge panel is not required to identify the mitigating factors which were found to exist which resulted in the imposition of a life sentence. Petitioner argues that this leads to no meaningful appellate review as no comparison can be made between life sentence and death penalty cases.

The Sixth Circuit rejected this argument in *Buell*, noting that "no proportionality review is constitutionally required." *Buell*, 274 F.3d at 368 (citing *Pulley v. Harris*, 465 U.S. 37, 44-51 (1984)). There is also no constitutional requirement that a jury make specific findings authorizing the imposition of a death sentence. *Buell*, 274 F.3d at 368 (citing *Hildwin v. Florida*, 490 U.S. 638, 640-41 (1989)). This argument is without merit.

15.  **The proportionality system in Ohio is unconstitutional because, when conducting a proportionality review, the Ohio courts examine only cases in which the death penalty was imposed.**

This argument fails under *Pulley v. Harris*, because no proportionality review is constitutionally required. *Buell*, 274 F.3d at 368. *See also Smith*, 348 F.3d at 213-14 (comparative proportionality review is not constitutionally required); *Greer*, 264 F.3d at 691 (there is no Eighth Amendment right to proportionality review); *Byrd*, 209 F.3d at 539 (rejecting argument that Ohio law fails to provide for an adequate proportionality

222

review).

> Since proportionality review is not required by the
> Constitution, states have great latitude in defining the
> pool of cases used for comparison. (Citation omitted.)
> By limiting proportionality review to other cases already
> decided by the reviewing court in which the death penalty
> has been imposed, Ohio has properly acted within the wide
> latitude it is allowed.

*Buell*, 274 F.3d at 369. The proportionality system in Ohio is constitutional.

**16. The appropriateness analysis used by the Ohio courts under Ohio Rev. Code §2929.05(A) is unconstitutional because the courts do not follow the statutory mandate and conduct only a cursory review.**

Petitioner contends that the appropriateness review required under § 2929.05(A) is unconstitutional because Ohio courts do not comply with its provisions.

The Ohio scheme is constitutional on its face. The Supreme Court considers the "appropriateness" of a death sentence as the individualized sentencing determination undertaken after a jury or court has concluded that a defendant is eligible for the death penalty. *See Blystone v. Pennsylvania*, 494 U.S. 299, 305 (1990); *California v. Ramos*, 463 U.S. 992, 1007 (1983). Under the Ohio scheme, the appropriateness of the death penalty is determined when the sentencing body, having already found that a defendant convicted of aggravated murder is death-eligible because one or more aggravating circumstances has been proven beyond a reasonable doubt, undertakes a separate review of whether the aggravating circumstances outweigh any mitigating factors. At the time petitioner's case was reviewed, both the court of appeals and the Ohio Supreme Court were obligated to review the assessment of the three-judge panel, and to determine independently whether the

223

sentence of death was proportionate, non-excessive, and appropriate based on the record.

The Ohio scheme is sufficient to identify those death-eligible defendants who are actually deserving of the death sentence within the requirements of the Eighth Amendment. The Sixth Circuit in *Buell*, 274 F.3d at 368-69, noted the appropriateness review set forth in §2929.05(A) with approval. Petitioner has not shown that §2929.05(A) is unconstitutional on its face, or that the appropriateness review conducted in his case was inadequate.

**17.  The Ohio death penalty scheme suffers from the lack of competent counsel in capital cases.**

Petitioner argues that the Ohio death penalty scheme is unconstitutional because there is a lack of competent counsel in capital cases. Petitioner notes the American Bar Association's call for a moratorium on capital punishment due to the prevalence of unfair practices resulting from the lack of competent counsel in capital cases, the lack of a fair and adequate review process and the effects on minorities. Petitioner also refers to the conclusions of the United Nations High Commissioner for Human Rights, who found that the guarantees, safeguards and restrictions on capital punishment are not being respected, that the lack of adequate legal representation was disturbing, and that race, ethnicity, and economic status were the determinants of who will receive the death penalty.

Petitioner contends that the Ohio system suffers from the problems identified in these reports, including the lack of adequate funding of defense counsel, the lack of a fair and adequate appellate review process, and the pervasive effects of

race.  However, petitioner has offered no evidence to establish
that the Ohio system in fact suffers from these defects, or even
that his case in particular was prejudiced by such problems.  As
noted previously, the statistics concerning the racial composition
of death row in Ohio cited by petitioner have been held
insufficient to establish a constitutional violation.  Petitioner
has also failed to show that capital defendants in Ohio are denied
competent counsel, or that he himself was denied the effective
assistance of counsel, be it by reason of the incompetency of
counsel or the lack of funding.  Petitioner's bare allegations that
Ohio insufficiently funds its capital cases is not enough to
establish a constitutional violation.  *Taylor*, 296 F.Supp.2d at
838.

The court concludes that petitioner's eighteenth ground for
relief is without merit.  The decisions of the Ohio courts
rejecting petitioner's constitutional challenges to the Ohio death
penalty statutes were not contrary to, nor an unreasonable
application of, clearly established Supreme Court precedent.

**K. Nineteenth Ground for Relief**

Petitioner's nineteenth ground for relief is as follows:

John Fautenberry's convictions and death sentences are
invalid under the federal constitutional guarantees of
due process, equal protection, the effective assistance
of counsel, a fair tribunal, an impartial jury, and a
reliable sentence due to the cumulative errors in the
admission of evidence, the providing of jury
instructions, misconduct by state officials and
witnesses, and the systematic deprivation of his right to
the effective assistance of counsel.

Petitioner alleges that the cumulative errors that occurred
during his trial and appeal warrant habeas relief.  This claim is

225

without merit because, for the reasons previously stated in this opinion, petitioner's individual claims lack merit.

## IV. Conclusion

In accordance with the foregoing, petitioner's habeas corpus claims are denied, and this action is dismissed.  The clerk is hereby directed to enter judgment dismissing this action.


Date: April 11, 2005                    <u>        s\James L. Graham        </u>
                                        James L. Graham
                                        United States District Judge

226