**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JOHN FAUTENBERRY,                 :

        Petitioner.            :      DEATH PENALTY CASE

     vs.                    :      Case No.:   C1-00-332

BETTY MITCHELL, WARDEN,    :      JUDGE:      GRAHAM

        Respondent.       :      MAGISTRATE JUDGE:    KEMP

..     ..     ..     ..     ..     ..     :

---

## PETITIONER JOHN FAUTENBERRY'S MOTION
## FOR A CERTIFICATE OF APPEALABILITY

---

Dennis L. Sipe, #0006199
BUELL & SIPE CO., L.P.A.
322 Third Street
Marietta, OH 45750
(740) 373-3219 (Phone)
(740) 373-2892 (Fax)

W. Joseph Edwards
495 South High Street
Suite 100
Columbus, OH 43215

Counsel for Petitioner,
 John Fautenberry

Jim Petro
Attorney General

Timothy D. Prichard, #0059455
Gregory A. Perry, #0065251
Assistant Attorney Generals
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, OH 43215
(614) 728-7055 (Phone)

Counsel for Warden Mitchell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FAUTENBERRY, | : | |
| Petitioner. | : | DEATH PENALTY CASE |
| vs. | : | Case No.:     C1-00-332 |
| BETTY MITCHELL, WARDEN, | : | JUDGE:          GRAHAM |
| Respondent. | : | MAGISTRATE JUDGE:      KEMP |
| ..      ..      ..      ..      ..      .. | : | |

## PETITIONER JOHN FAUTENBERRY'S MOTION
## FOR A CERTIFICATE OF APPEALABILITY

John Fautenberry, pursuant to 28 U.S.C. §2253(C) and Federal Rule of Appellate Procedure 22, moves this Court to grant him a Certificate of Appealability, on the issues identified herein. The reasons for the Motion are more fully set forth in the attached Memorandum of Law.

Respectfully submitted,

_____
Dennis L. Sipe, #0006199
BUELL & SIPE CO., L.P.A.
322 Third Street
Marietta, OH 45750
(740) 373-3219 (Phone)
(740) 373-2892 (Fax)

-1-

W. Joseph Edwards
495 South High Street
Suite 100
Columbus, OH 43215
(614) 224-8166 (Phone)

Counsel for Petitioner,
 John Fautenberry

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    PROCEDURAL BACKGROUND**

On April 11, 2005, this Court denied John Fautenberry's Corrected Petition for Writ of Habeas Corpus. [Doc. Nos. 103 and 104].

On May 11, 2005, John Fautenberry timely filed his Notice of Appeal to the Sixth Circuit [Doc. No. 105] and Intent to Seek A Certificate of Appealability (COA) [Doc. No. 107]. John Fautenberry respectfully petitions this Court for a COA on nine of the claims contained in his Corrected Petition so that he may appeal these issues to the Sixth Circuit.

**II.    STANDARD OF REVIEW**

For a Certificate of Appealability to issue the "habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that issues presented were 'adequate to deserve encouragement to proceed further'". *Slack vs. McDaniel*, 529 U.S. 473, 483-484 (2000) (citing *Barefoot vs. Estelle*, 463 U.S. 880, 894 (1983)). A habeas petitioner is not required to demonstrate he will succeed on a claim to be granted a Certificate of Appealability. *Miller-El vs. Cockell*, 537 U.S. 322, 336 (2003).

John Fautenberry respectfully submits that each of the grounds identified herein is plainly of sufficient merit and constitutional import to deserve encouragement to proceed further and seeks this Court's grant of the certificate of appealability on each issue.

## III.    CONSTITUTIONAL CLAIMS.

**SECOND GROUND FOR RELIEF**:    MR. FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE INVALID BECAUSE HIS LEAD TRIAL COUNSEL LABORED UNDER A CONFLICT OF INTEREST IN HIS DUAL ROLE OF ATTORNEY FOR JOHN FAUTENBERRY AND TRUSTEE FOR ANDERSON TOWNSHIP, THE POLITICAL SUBDIVISION IN WHICH THE DECEDENT'S BODY WAS FOUND.  United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

Lead counsel for John Fautenberry at trial, Michael Walton, served as a trustee for the township in which the decedent's body was found.  In his role as township trustee, Attorney Walton contracted with the Hamilton County Sheriff to provide law enforcement services for the Township.  Those services would have included the investigation of the current offense.  Attorney Walton was also represented in his role as township trustee, by the Hamilton County Prosecutor's Office in an unrelated civil suit.

The Sixth Amendment right to counsel includes the right to representation that is free from conflicts of interest.  *Wood vs. Georgia*, 450 U.S. 261, 271 (1981); *Glasser vs. United States*, 315 U.S. 60, 70 (1942).  The duty to provide conflict-free assistance is the essence of counsel's most "basic" "duty of loyalty".  *Strickland vs. Washington*, 466 U.S. 668, 692 (1984).  The existence of an actual conflict of interest violates not only the Sixth Amendment, but also the due process guarantee of the Fifth and Fourteenth Amendments.  *Wood vs. Georgia*, 450 U.S. 261 (1981).  *See also*, *Smith vs. Anderson*, 689 F.2d 59, 62-63 (6th Cir., 1982) (affirming grant of writ where conflict of interest).  The "assistance of counsel is among those 'constitutional rights' so basic to a fair trial that their infraction can never be treated as harmless error.".  *Holloway vs. Arkansas*, 435 U.S. 475, 489 (1978).

-4-

The United States Supreme Court has repeatedly cautioned against the high probability of prejudice from multiple concurrent representation.  *See e.g., Mickens vs. Taylor*, 535 U.S. 162, 175 (2002).  "In a case of joint representation of conflicting interests the evil – it bears repeating – is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.".  *Holloway vs. Arkansas*, 435 U.S. at 490.

The Court in denying this claim relied upon several cases, all of which are distinguishable. [Decision, p. 13].  In *Paradis vs. Rave*, 130 F.3d 385, 391 (9th Cir., 1997), defense counsel worked as a park ranger for a police department.  Neither that department, "let alone its park police" were involved in the investigation of the offense for which the defendant was on trial.  In *Beaver vs. Thompson*, 93 F.3d 1186, 1193, defense counsel worked as "a part-time Commonwealth's attorney in *neighboring* Dinwiddie County".  (Emphasis added).  In *Small vs. Endicolt*, 998 F.2d 411, 417 (7th Cir., 1993), defense counsel "served as a special prosecutor in an unrelated murder" case.

The factual scenario of those cases are to be contrasted with the present case in which Attorney Walton was voting on funding for the law enforcement agency that had the responsibility of investigating John Fautenberry.  Petitioner submits that the Court's efforts to distinguish Opinion No. 96-6, 1996 WL 467118 (August 9, 1996), are unpersuasive. [Decision, p. 15].  A city counsel cannot accept appointment in criminal cases involving the police department for which the counsel "determines the number of officers, clerks and expenses...". [Id. at p. *4].  Attorney Walton, when he negotiated the terms of the contract with the Hamilton County Sheriff's Department, determined the number of officers, clerks and expenses that would be serving the township.

-5-

The Court relied upon *Powell vs. Bordemkircher*, 789 F.2d 425 (6th Cir., 1986). [Decision, p. 14]. The petitioner in that case was represented by the city attorney for the city in which the trial took place. Id. at 426. The Sixth Circuit recognized that defense counsel suffered from a conflict, but excused the conflict because the trial took place in a small town in which there were few attorneys, "In short, we probably have a conflict between legal principle and practicality which is not at all unusual in the law.". Id. at 426. Even assuming a shortage of attorneys is a valid reason to excuse constitutional error, that shortage did not exist in Cincinnati, Ohio.

The facts of the case did not justify counsel not filing a Motion to Suppress, not requiring the prosecution to prove its case by proof beyond a reasonable doubt and not making full mitigation presentation. Conflicts require a demonstration of a lower standard of prejudice because the advocate finds himself doing less. *Holloway vs. Arkansas*, 435 U.S. at 90. Attorney Walton in this case did less as opposed to more, which is the norm in a capital case.

Accordingly, John Fautenberry respectfully requests that this Court issue a Certificate of Appealability on this issue. Reasonable jurors could debate whether the issue could have been resolved differently. Given the paucity of Sixth Circuit precedent as to this factual scenario, the issue is "adequate to deserve encouragement to proceed further.".

**FOURTH GROUND FOR RELIEF**: MR. FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE THE TRAIL PROSECUTORS SUPPRESSED MATERIAL EXCULPATORY AND IMPEACHMENT EVIDENCE. United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

This Court determined that the trial prosecutors failed to disclose all but five of the documents in question. [Decision, pp. 25-29]. Thus, the issue becomes whether the suppression of those documents prejudiced John Fautenberry. [Decision, pp. 29-30]. John Fautenberry will address the Court's findings with respect to the same categories that he employed in his Traverse [Doc. 86,

pp. 23-32] and this Court employed in its Opinion. [Decision, pp. 31-56].

A.     The Police Report Concerning The Alaska Interrogation.

The suppressed report of Sgt. Robertson, which documented that John Fautenberry refused to return Agent's Ott's telephone calls as to whether he wished to be interviewed. [Traverse Doc. 86, pp. 20-22]. Agent Ott telephoned Petition to ascertain whether he wanted to speak with him. John Fautenberry's refusal to return the telephone calls placed Ott on notice that he no longer wished to speak with him. That is the only reasonable interpretation that Ott could have arrived at given the failure to receive a telephone call by Petitioner.

The Court relies upon the fact that the record is silent as to the reason that John Fautenberry did not return the Agent's telephone calls. [Doc. p. 33]. Petitioner respectfully suggests that the reason is irrelevant. The focus is instead upon what reasonable interpretation Agent Ott would have made of the failure to receive a returned telephone call.

The Court places "great weight" on John Fautenberry's original telephone call to Agent Ott. [Decision, p. 33]. But the refusal to return his telephone calls is entitled to equal weight.

B.     The Police Report Covering The Lack Of Venue.

The investigating officers were unclear as to which county or state the murder occurred. [Traverse Exhibits 8, 9, 10, 11]. The Court suggests that the information contained in the documents was "largely cumulative" of the information provided in discovery. [Decision, pp. 37, 39]. Petitioner respectfully disagrees. That Detective Nelson questioned John Fautenberry about the location of the murder did not place defense counsel on notice that there existed documents that indicated that the investigating officers did not know where the murder occurred.

The Court relied upon the fact that John Fautenberry "gave a *fairly* detailed

description to Detective Nelson" of where the offense occurred. [Decision, p. 39]. (Emphasis added). The Court failed to address John Fautenberry's conflicting statement that the offense occurred in Kentucky.

C.    Police Reports As To Joseph Daron.

The police, when attempting to locate the victim, developed information that he was suicidal, depressed, drug dependent and "flat broke". [Traverse Doc. 86, pp. 25-26].

This Court downplays the significance of the information because John Fautenberry had confessed. [Decision, p. 42]. The Court cites to the confession that he made to Agent Ott. [Id.]. Yet, as demonstrated in Section A of this Ground for Relief, that statement is suspect given other statements suppressed by the prosecutor.

D.    The Police Reports That Document That The Sexual Aspects Of The Homicide.

The police had several reports that indicated that the homicide had a sexual nature. The Court initially asserts that much of the evidence John Fautenberry cited was disclosed. [Decision, pp. 46-47]. Yet this does not relieve the prosecution of its duty to provide the additional reports in question. [Traverse Exhibits 17, 24]. The Court has already determined the reports were not disclosed. [Decision, pp. 26-29]. For instance, if a defendant claims he was intoxicated at the time of the offense, the State is required to disclose the reports in its possession that he was intoxicated.

The Court also suggested the information concerning sexual aspects of the homicide could not have been Brady material because they were in "petitioner's personal knowledge". [Decision, pp. 47-48]. Yet John Fautenberry, because of his severe depression, was not communicating with defense counsel. Thus, it could not be expected that he would or was capable

of providing the information to counsel.

Finally, the Court suggests that the information was not material because John Fautenberry told Detective Nelson that there was not a sexual component to the murders. [Decision, pp. 48-49]. The Court cites no precedent for its conclusion. Again, the example of the intoxicated defendant is helpful. Even if the defendant denies the commission of the offenses, the police must still provide defense counsel with witness statements that reflect that the defendant was intoxicated at the time of the commission of the offense.

E.    The Police Reports Concerning Petitioner's State of Mind.

The police suppressed reports that John Fautenberry was extremely depressed around the time of the commission of the offense. [Traverse Exhibits 30-32].

The Court concludes that "To be sure, the court is of the view that evidence demonstrating that petitioner was extremely depressed and even suicidal is relevant, material evidence that probably should have been disclosed to defense counsel". [Decision, p. 52].

The Court, however, conceded that the granting of the writ is not warranted because defense counsel "knew or should have known about his depression". [Decision, pp. 53-55]. The fact that the reports contained information that counsel should have been aware does not remove the exculpatory value. Corroborating information can be exculpatory information. In addition, the Court conducted its prejudice analysis only with respect to the trial and not the sentencing phase. Evidence of depression is mitigating evidence.

F.    Conclusion As To The Fourth Ground.

The Court did not assess the cumulative impact of the information in the suppressed report. For instance, the suppression of the information concerning John Fautenberry's initial

statement renders the jurisdictional issue stronger.

The Court applies a higher standard because John Fautenberry pled no contest. [Decision, pp. 30-31]. Yet pursuant to Ohio Crim. R. 11, John Fautenberry was entitled to a mini trial or evidentiary hearing on his culpability even though he pled no contest. John Fautenberry was also entitled to all exculpatory evidence as to the sentencing phase, which he did not waive.

This case involves unique suppression issues given Ohio's capital procedures. John Fautenberry respectfully requests that this Court grant him a COA on the Fourth Ground for Relief.

**FIFTH GROUND FOR RELIEF**:     MR. FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE HIS WAIVER OF HIS RIGHT TO A JURY TRIAL IN BOTH PHASES OF THE PROCEEDINGS WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.  United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

John Fautenberry, at the time of his guilty pleas, suffered from brain damage and other dehabilitating mental illnesses. The plea form that he executed did not address his right to a jury trail at sentencing. The trial court's colloquy did not adequately address this issue. Waivers of constitutional rights, such as waiving trial by jury, "not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.". _Brady vs. United States_, 397 U.S. 742, 748 (1970); see also _Adams vs. United States ex rel. McCann_, 317 U.S. 269, 275 (1943).

The written jury waiver was inadequate for two reasons, it failed to apprise John Fautenberry that he would be tried by a three judge panel as opposed to a single judge, and it failed to apprise him that he had a right to have a jury determination as to his sentence. The latter deficiency is more significant. This Court went into great detail as to the manner in which the trial court corrected the first error. [Decision, pp. 65-67]. Yet the Court failed to cite to any place where

-11-

the trial court "adequately" corrected the "misconception" which arose from the form's failure to advise John Fautenberry as to the right to have a jury decide the issue of punishment.

The Constitution demands "the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the [waiver] connotes and its consequence.". _Boykin vs. Alabama_, 395 U.S. 238, 243-44 (1964). As stated by the Supreme Court:

> ...[T]he duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable and undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

_Patton vs. United States_, 281 U.S. 276, 312-13 (1930). (Emphasis added). In this regard, it is necessary – indeed only reasonable – that the defendant be instructed that he had a right to a jury decide sentence.

This Court concluded that John Fautenberry's mental illness did not affect the knowing and intelligent aspect of his jury waiver because he was competent. [Decision, pp. 69-72]. The fact, however, that he was competent to stand trial does not end the inquiry. The Court failed to address all of the mental health evidence John Fautenberry submitted [Id. at pp. 59-60] when it concluded that the plea was knowingly and intelligently entered. [Id. at pp. 69-72]. It dismisses much of the mental health evidence as "self serving" [Id. at p. 69], but failed to recognize that the evidence was generated when John Fautenberry had nothing to gain by making these statements. The Court did not address John Fautenberry's brain damage. The Seventh Circuit recently granted habeas relief when it determined that a petitioner's "brain injuries severely disrupted his ability to think, reason, take in verbal information and understand" and accordingly precluded him from

-12-

knowingly and intelligently waiving his right to testify given the trial court's limited colloquy with him. _Ward vs. Sternes_, 334 F.3d 696, 705-707 (7th Cir., 2002).

John Fautenberry submitted the affidavit of Dr. Susan Shorr to support his affidavit that trial counsel did not meaningfully communicate with him. The Court discounted Dr. Shorr's affidavit because it does not indicate "that she was privy to any conversations between petitioner and his attorneys concerning the jury waiver issue.". [Decision, p. 68]. If counsel had not meaningfully communicated with John Fautenberry on other issues, then it is doubtful that it would have communicated effectively with him on this issue.

The Court relies upon _Lott vs. Coyle_, 261 F.3d 594 (6th Cir., 2001). [Decision, pp. 63-64]. The question, however, of whether the right of jury trial was validly waived is a fact intensive process. The language within the _Lott_ opinion limits the holding to the facts of that case, "[i]t is well established that 'whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused *must depend upon the unique circumstances of each case*.'". Id. at 615. (Emphasis added). Though the _Lott_ Court did not have before it ineffectiveness and mental health claims similar to those in this case, it still found that it was a "close question" as to "whether the colloquies between Lott and the trial judge and between Lott's counsel and the trial judge were constitutionally sufficient.". [Id.].

Petitioner respectfully submits that the Courts failed to assess the cumulative impact of all four factors upon which John Fautenberry relies. He had severe mental health problems, had a breakdown in his relationship with his attorney, and signed a flawed jury waiver which was not totally corrected by the trial court's colloquy.

-13-

Reasonable jurists could disagree as to the manner in which this claim was resolved. Accordingly, John Fautenberry respectfully requests that this Court issue a certificate of appealability on the Fifth Ground for Relief.

**SEVENTH GROUND FOR RELIEF**:    MR. FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE HIS NO CONTEST PLEAS WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.  United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

Defense counsel advised John Fautenberry improperly concerning his no contest pleas.  They told him that the entering of those pleas would: 1) preclude the admission of evidence concerning the other homicides; 2) constitute mitigating evidence; and 3) preserve his pre-trial issues for appeal.  He relied upon this advice when entering his pleas.  The trial court then compounded these errors by finding John Fautenberry guilty without the prosecution offering any evidence. [Traverse Doc. 86, pp. 46-53].

No contest and guilty pleas must represent a knowing and intelligent choice among the alternative courses open to the accused.  *North Carolina vs. Alford*, 400 U.S. 25, 31 (1970); *Boykin vs. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda vs. United States*, 368 U.S. 487, 493 (1962).

The Court began its analysis by concluding that John Fautenberry was competent. [Decision, p. 78].  John Fautenberry has never claimed in the proceedings before this Court that he was incompetent.   Instead, he has demonstrated the severe depression, paranoia and brain impairment  impaired his problem solving ability and thought processes at the time he entered his plea. [Doc. 86, pp. 46-47].

-14-

Petitioner respectfully submits that this Court incorrectly concluded that the record refutes that defense counsel improperly advised him concerning his no contest pleas. The Court asserted that "petitioner was informed when he waived a jury that the three judge panel would hear evidence concerning the aggravated murder and *other charges*". [Decision, p. 78]. (Emphasis added). The phrase "other charges" could be reasonably interpreted to refer to the non-capital charges contained in the indictment. The Court asserts that "during the change of plea proceedings... petitioner had been advised he would be waiving claims of potential error.". [Decision, p. 79]. The panel advised John Fautenberry that he would be waiving "potential errors" that occurred "in a trial", not errors that occurred in the pre-trial proceedings. [Apx. Vol. I, pp. 40-42]. The colloquy did not rebut defense counsel's misadvice to John Fautenberry that his no contest plea would preserve his pre-trial errors for purposes of appeal.

This Court correctly concluded that the prosecutor was obligated to prove John Fautenberry's guilt by proof beyond a reasonable doubt and the prosecution failed to produce *any* admissible evidence to establish John Fautenberry's guilt. [Decision, pp. 79-81]. A state court's failure to abide by a state statute can constitute a violation of due process. *Hicks vs. Oklahoma*, 447 U.S. 343, 346 (1980); *Fox vs. Coyle*, 271 F.3d 658, 665-666 (6th Cir., 2001); *Howard vs. Grinage*, 82 F.3d 1343, 1349-1350 (6th Cir., 1996).

The Court, without any citation to authority, asserts that the error was cured by the trial court's acceptance of testimony at the mitigation phase concerning John Fautenberry's guilt. [Decision, p. 83]. A defendant's guilt must be demonstrated by evidence produced by the prosecution before and not after the trier of facts' deliberations in the trial phase.

-15-

The Court also found that defense counsel could stipulate to the factual predictor for the no contest pleas. [Decision, p. 83]. The Court attempted to distinguish between the situation in which defense counsel stipulated that the prosecution need not produce testimony and when counsel simply failed to object to the prosecutions' failure to produce testimony. [Decision, p. 82]. While John Fautenberry agrees that the Ohio Supreme Court has made such a distinction [Id. at pp. 80-81], there is no meaningful distinction to be made. Under either scenario, the trial court lacked the evidentiary basis to accept the plea.

The courts were required to apply a totality of the circumstance test to determine if John Fautenberry knowingly and intelligently entered his no contest pleas. *Brady vs. United States*, 397 U.S. 742, 755 (1970). No court has examined the combined effect of John Fautenberry's mental illnesses, brain impairment, misadvice of counsel, and the prosecution's failure to present any evidence.

John Fautenberry respectfully requests this Court to grant a COA on the Seventh Ground for Relief. Reasonable jurists could differ, especially with respect to the trial court's failure to take evidence. The Sixth Circuit has yet to address this issue in the context of the failure of the prosecution to produce *any* evidence.

**NINTH GROUND FOR RELIEF**:    MR. FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE COUNSEL FAILED TO PROVIDE HIM WITH THE REASONABLE EFFECTIVE ASSISTANCE DURING THE TRIAL PHASE. United States Constitution, Sixth, Eighth and Fourteenth Amendments.

Defense counsel was ineffective because they 1) conducted an unreasonable trial phase investigation [Traverse Doc. 86, pp. 62-67]; 2) improperly advised him concerning his no contest pleas [Id. at pp. 68-71]; and 3) performed deficiently at the no contest plea hearing. [Id. at pp. 71-72].

The Court found that the first two components were procedurally defaulted.  As a result, the first component is addressed in the context of the cause and prejudice that the prosecutor suppressed evidence.  The second component is addressed in the context of cause and prejudice, appellant counsel's ineffectiveness.  The Court did not address the third component of the Ground for Relief.

John Fautenberry requests a COA on the third component.  Defense counsel, at the plea hearing, failed to require the prosecution to prove John Fautenberry's guilt.  There is nothing in the record that supports the conclusion that this was a strategic decision.  John Fautenberry had nothing to lose and everything to gain by putting the state's case to the test.  The Criminal Rule clearly required the prosecution to call witnesses and the three judge panel to act as a jury.  The prosecution may well have decided not to expend the resources to bring all of the necessary witnesses from around the county.

This Court determined the first component the defense counsel's failure to conduct a reasonable investigation is procedurally defaulted.  Therefore, John Fautenberry must prove that reasonable jurists could differ both as to the procedural default and substantive issue determination.  *Slick vs. McDaniel*, 529 F.3d 473 (2000).  John Fautenberry submitted as "cause" the prosecution's suppression of evidence (which the Court has already determined existed).

John Fautenberry focused on defense counsel's failure to investigate two factual issues, that the homicide took place in the State of Kentucky and the police improperly interrogated John Fautenberry. [Traverse Doc. 86, pp. 65-67].

Petitioner respectfully submits that this Court incorrectly determined that John Fautenberry was not prejudiced because "there was no significant issue concerning venue or

-17-

jurisdiction". [Decision, p. 89]. This Court did not reconcile this finding with its other findings that Sgt. Boeing of the Hamilton County Sheriff's Department conceded early in the investigation that he did not know where the homicide occurred. [Traverse Exhibit 9]. These concerns were memorialized by two FBI teletapes. [Traverse Exhibits 10-11]. At one point, John Fautenberry confessed to committing the murder in the State of Kentucky. [Traverse Exhibit 33]. To establish prejudice to cure any defect or to be entitled to a COA, John Fautenberry has a lower burden of proof. He met that burden as a result of the supported documents.

John Fautenberry also requests a COA concerning defense counsel's failure to conduct a reasonable investigation concerning the circumstances surrounding Agent Ott's interrogation of him. The Court accurately assesses the fact that John Fautenberry 1) initially requested counsel; 2) then telephone Agent Ott requesting that the Agent speak with him; and 3) then refused to respond to two telephone calls from the Agent to confirm that he [John Fautenberry] actually wished to speak with Agent Ott. [Decision, pp. 90-91].

The Court provides no explanation other than "The Court cannot do this" with respect to his argument. [Id. at p. 93]. If John Fautenberry had desired to speak with Agent Ott, he would have returned one of the Agent's telephone calls.

John Fautenberry respectfully requests that the Court issue a COA on parts A and C of the Ground for Relief. Reasonable jurists could differ whether both the procedural default and substantive aspects of this Ground for Relief.

**ELEVENTH GROUND FOR RELIEF**: JOHN FAUTENBERRY'S DEATH SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE THE THREE JUDGE PANEL ADMITTED IMPROPER EVIDENCE IN THE PENALTY PHASE. United States Constitution, Sixth, Eighth and Fourteenth Amendments.

-18-

The trial court, in the sentencing phase, improperly admitted 1) the death recommendations of the investigating officers and decedent's spouse [Doc. 86, pp. 87-91]; 2) evidence concerning John Fautenberry's alleged future dangerousness [Id. at pp. 91-92]; and 3) voluminous testimony concerning the other homicides [Id. at pp. 92-94]. John Fautenberry requests a COA only as to the death recommendations issue. This Court addressed the merits of this issue. [Decision, pp. 94-100].

The trial court admitted in the sentencing phase the death recommendations of both the widow of the decedent and the lead investigating officers. The Ohio Supreme Court correctly determined that the admission of the recommendation was improper. [St. Ct. App. Vol. III, p. 436].

The Ohio Supreme Court and this Court incorrectly determined that this error was harmless. [Decision, pp. 98-99]. Courts have limited the admissibility of victim impact evidence because it is powerfully gut wrenching evidence which can easily sway the sentencing phase deliberations in an arbitrary manner.

Since John Fautenberry briefed this issue, the Sixth Circuit addressed the harmless error aspect in the context of a three judge panel. _Brewer vs. Anderson_, 2002 WL 31027950 (6th Cir., Sept. 10, 2002), p. *4. The holding in _Cooey vs. Coyle_, 289 F.3d 882, 911 (6th Cir., 2002) is distinguished. [Decision, p. 98]. In that case, the panel clearly indicated that the impact statement "had no bearing on the decision of the Court as to the death penalty.". Id. Since that opinion is unreported, it is of little prejudicial value. The Ohio Supreme Court's presumption is illogical that unless a three judge panel cites to evidence in its sentencing opinion, it has not considered that evidence. A panel could only cite to all of the evidence it considered by attaching a copy of the transcript to its sentencing opinion. Even assuming that the panel only considered admissible

-19-

evidence, the status of the admissibility of victim impact evidence was in a state of flux at the time of John Fautenberry's trial.

Reasonable jurists could debate whether the admission of the death recommendations was harmless error.  John Fautenberry respectfully requests this Court to grant a COA on Section A of the Twelfth Ground for Relief.

**TWELFTH GROUND FOR RELIEF**:  JOHN FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE THE ATTORNEYS WHO REPRESENTED HIM DURING THE MITIGATION PHASE FAILED TO PROVIDE REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL.  United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

Defense counsel failed to provide the level of services required in the sentencing phase of a capital trial and John Fautenberry was prejudiced. [Traverse Doc. 86, pp. 95-111]. Counsel failed to conduct a reasonable investigation [Id. at pp. 96-102] and John Fautenberry was prejudiced.  [Id. at pp. 103-111].

This Court's opinion as to this Ground for relief consists of fifty-nine pages. [Decision, pp. 100-159].  The Court failed to cite to the relevant Sixth Circuit decisions and ABA standards.

The Supreme Court has within the last five years granted relief in the sentencing phase of two capital cases.  _Williams vs. Taylor_, 529 U.S. 382 (2000) and _Wiggins vs. Smith_, 123 S.Ct. 2527 (2003).  In both cases, the Court faulted defense counsel for not conducting a reasonable investigation.  The Court does not cite to either case with respect to counsel's duty to investigate. Neither Supreme Court case mentions the dichotomy upon which this Court relied that a different standard of prejudice applies when counsel conducts some sentencing phase investigation as opposed to no sentencing phase investigation. [Decision, p. 111].

The Sixth Circuit has applied _Wiggins_ in at least two capital cases.  _Frazier vs. Huffman_, 343 F.3d 780 (6th Cir., 2004); _Hamblin vs. Mitchell_, 354 F.3d 482 (6th Cir., 2003).  In _Frazier_, the Circuit found, pursuant to _Wiggins_, that trial counsel had failed to conduct a reasonable investigation concerning Frazier's brain impairment.  ("We can conceive of no reasonable trial strategy that would justify the failure of Frazier's counsel to investigate and present evidence of his

-21-

brain impairment"). Id. at 794. The Court concluded, again citing to _Wiggins_, that even if that brain impairment did not affect the jury's trial phase decision, there was a "probability that at least one juror would not have decided that the aggravating circumstance of the case outweighed the mitigating factors beyond a reasonable doubt....". Id. at 799.

In _Hamblin_, the Circuit again granted sentencing phase relief because of trial counsel's ineffectiveness. The Court held that both the 1989 and 2003 ABA standards, upon which the Supreme Court relied in _Wiggins_, would be considered the prevailing standards for Hamblin's case, which was tried in the mid 1980's. 354 F.3d at 482. The Court reached this conclusion "because they are the clearest exposition of counsel's duties at the penalty phase of a capital case, duties that were recognized by the Court as applicable to the 1982 trial of the defendant in _Glenn vs. Tate_, 71 F.3d 2104, 1206-08 (6th Cir., 1995).". Id. at 488. Trial counsel in _Hamblin_ had not presented evidence of petitioner's deprived and violent childhood. The Circuit held that Hamblin was prejudiced because there was a reasonable probability that if the additional evidence had been presented "at least one juror would have voted against the death penalty". Id. at 493.

Therefore, pursuant to _Wiggins_ and _Hamblin_, this Court is to evaluate John Fautenberry's ineffectiveness claim and to apply the _Strickland_ test with two principles in mind. This Court is to analyze the deficiency prong of _Strickland_ by applying the 1989 and 2003 ABA standards to counsel's performance. This Court is to decide the prejudice prong based upon whether there is a reasonable likelihood that one juror would have determined that the circumstances in the present case did not outweigh the mitigating factors by proof beyond a reasonable doubt.

This Court in its opinion failed to cite the ABA standards, the relevant standard as to prejudice.

The 1989 ABA standards suggested that counsel contact or interview the following groups of persons for purposes of the sentencing phase investigation, 1) witnesses familiar with the client's life and his development from birth to sentencing; and 2) experts, to provide medical, psychological, and sociological explanations for the commission of the offense. 1989 Guideline 11.8.3. The 2003 ABA standards provide that "Counsel at every stage have an obligation to conduct thorough and independent investigation relating to the issues of both guilt and punishment.". 2003 Guideline 10.7(A). The Commentary to this guideline states that the "penalty phase investigation requires *extensive and generally unparalleled* investigation into personal and family history (citations omitted)". (Emphasis added). The Commentary directs that counsel needs to explore the defendant's 1) medical; 2) family; 3) educational; 4) military; 5) employment; and 6) social histories.

The Court described the evaluation of the sentencing investigator as "hindsight". [Decision, p. 128]. John Fautenberry suggests that it is only hindsight to the extent that he has viewed the prior acts and omissions if defense counsel as not meeting the relevant ABA guidelines. To a certain extent, any evaluation involves hindsight.

The sentencing investigator, Dr. Susan Shorr, has concluded that the sentencing investigation was incomplete (therefore failed to meet these ABA guidelines).

The Court holds that counsel had nothing to gain by soliciting information from Olivia Herndon Priest concerning John Fautenberry's commission of the offense. [Decision, p. 129]. Yet she could have explained John Fautenberry's mental state at the time of the commission of the offenses. Counsel is required to link mitigating factors such as depression to the commission of the offense. 2003 ABA Guidelines 10.11 Commentary.

-24-

The Court concludes that defense counsel had no duty to build a trusting relationship with John Fautenberry. [Decision, p. 126]. This finding is contra to the Commentary to 2003 ABA Guideline 10.7 that provides "Counsel should bear in mind that much of the information that must be elicited for the sentencing phase is very personal and may be exceedingly difficult for the client to discuss.... Obtaining such information requires overcoming considerable barriers...".

The Court further concluded that counsel's reliance upon Dr. Schmidtgoessling of the Hamilton County Court Clinic to determine the existence of brain damage and other psychological infirmities was reasonable. [Decision, pp. 130-131]. The Court's conclusion conflicts with the decision of the Sixth Circuit that it is not reasonable for defense counsel to rely upon the Hamilton County Court Clinic in general or Dr. Schmidtgoessling specifically as to the existence of brain impairment. _Powell vs. Collins_, 332 F.3d 376, 392. The Sixth Circuit in that case concluded:

> The trial court's denial of an _Ake_ expert in this case cannot be considered harmless error inasmuch as, by her own admission, Dr. Schmidtgoessling was not equipped to conduct the appropriate examination required for her to set forth all of the facts or information the jury should have considered at mitigation. Dr. Schmidtgoessling began by acknowledging that "mitigation is a much broader question than addressed to date... and if the Court wants a full understanding, I feel it is important to use the techniques to answer those questions." (J.A. at 1026). She then went on to explain that neither she nor any other staff member at the court's psychiatric clinic were qualified to conduct the type of testing and evaluation that was required to diagnose Petitioner with organic brain damage for the purpose of showing the effect of that factor at mitigation. Dr. Schmidtgoessling indicated that such testing would require a referral to a comprehensive medical facility and specialists in the appropriate fields – precisely the type of assistance Petitioner sought but was denied.

Id. at 395.

-26-

The Court suggests that because "attorneys are not mental health experts", they "cannot be expected to question expert opinions". [Decision, p. 131]. The Sixth Circuit, however, has reached a different conclusion as to counsel's role with respect to experts:

> Even though trial counsel was not a scientist, this should not relieve him of his responsibility to understand the evidence being used to convict and execute his client. Furthermore, aside from the presentation of testimony from his own expert, he would have to be sufficiently informed to cross-examine the State's experts. *See Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ("[C]ounsel had a duty to garner the expertise necessary to cross examine [the State's expert].").  This responsibility was heightened here, given that the State called to the stand not only its own experts but also DuBois. *See Glenn*, 71 F.3d at 1210 ("We can only assume that defense counsel, not having done their homework, were not prepared to interrogate [their court-appointed experts] about the basis for the very damaging conclusions they stated."). That counsel was a lawyer, rather than scientist, should not have left him unable to comprehend even the basics of the science at issue. This is particularly so when the chain of custody, which is a legal issue, was critical to the reliability of the scientific evidence.

<u>*Richey vs. Mitchell*</u>, 395 F.3d 660, 685 (6th Cir., 2005).

If they had conducted a reasonable investigation, counsel would have been able to effectively question the findings of Dr. Schmidtgoessling and provided her with information which would have possible caused her to change her opinion. While counsel interviewed and deposed Olivia Priest Herndon [TR 166-240], however, they never bothered to develop with her any information concerning John's commission of the offenses. Trial counsel interviewed and deposed Louise Corcoran, but never developed any information concerning the blow to John's head that altered his behavior. [St. Ct. App. Vol. X, pp. 166-167]. Counsel never deposed Kenneth Corcoran, who could have provided detailed information concerning the injuries to John's head. [St. Ct. App. Vol. IX, pp. 219-220]. Statements of head injuries are "red flags" as to brain impairment.

-28-

The Court, when it assessed the prejudice prong, failed to address the cumulative impact of counsel's unreasonable performance of the incomplete investigation, the inadequate mental health evaluation and the deficient presentation of evidence.  This Court did not determine if all of the evidence could have impacted the decision of one member of trier of fact.  The Sixth Circuit has concluded that a single failure of deference caused to discover brain impairment constituted ineffective assistance of counsel.  *Frazier vs. Huffman*, 343 F.3d at 794.  Trial counsel in the present case failed to present evidence of brain impairment plus additional mitigating evidence.

Reasonable jurists could reach different conclusions as to this claim.  John Fautenberry respectfully requests that this Court issue a COA on the Twelfth Ground for Relief.

**FOURTEENTH AND FIFTEENTH GROUNDS FOR RELIEF**:  JOHN FAUTENBERRY'S CONVICTIONS AND SENTENCES ARE CONSTITUTIONALLY INFIRM BECAUSE HE WAS NOT AFFORDED THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS DIRECT APPEALS OF RIGHT TO THE HAMILTON COUNTY COURT OF APPEALS AND THE OHIO SUPREME COURT.  United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

Appellate counsel for John Fautenberry raised only seven issues in his direct appeals to the Hamilton County Court of Appeals and the Ohio Supreme Court despite the fact that it was a capital case.  In reality, appellate counsel raised only five issues, Assignment of Error Nos. 1-3 and Proposition of Law Nos. 2-4 address flaws or errors in the trial court opinion. [St. Ct. App. Vol. III, pp. 46-59, 249-265].  The Hamilton County Court of Appeals identified an additional flaw in the opinion. [Id. at pp. 158-159].  Appellate counsel failed to raise that issue in the Ohio Supreme Court.

This Court determined that the Fourteenth Ground for Relief was procedurally defaulted, but that John Fautenberry had cause to excuse the default. [Decision, pp. 173-174].  The Sixth Circuit has now found inadequate the sate court rule that this Court employed as a basis for

its default finding. *Richey vs. Mitchell*, 395 F.3d 660, 679-680 (6th Cir., 2005). Therefore, this Court can address the merit of the appellate ineffective claim without any cause and prejudice analysis.

John Fautenberry cited seven errors that appellate counsel unreasonably failed to raise on direct appeal. [Doc. 86, Traverse, pp. 124-129]. He will limit this Court's consideration, for purpose of this pleading to four of those errors:

1.  <u>The Hamilton County Officials Discriminated On The Basis Of Gender And Race In Selecting The Foreperson For John Fautenberry's Grand Jury</u>.

Jeff Roan, who is a Caucasian male, was the foreperson for the grand jury which capitally indicted John Fautenberry. Between 1982 and 1998, there were 87 grand juries in Hamilton County, which returned a total of 134 indictments. There were only four African American forepersons on these 87 grand juries. There were less than a quarter as many African American forepersons as would be expected, based upon the percentage of African Americans in Hamilton County. This under representation is statistically significant. Between 1982 and 1998, there were only 19 female forepersons for the 87 grand juries which returned capital indictments. There have been less than half as many female forepersons as would be expected, based on the percentage of in the population of Hamilton County. This under representation is also statistically significant. [Traverse Doc. 86, p. 1].

This Court rejected this argument solely because it was dependent upon "allegations" not "developed at trial, and were therefore not part of the trial record" and could not have been raised on direct appeal. [Decision, p. 178]. The Sixth Circuit has specifically rejected this reasoning. *Mapes vs. Coyle*, 171 F.3d 408, 425 (6th Cir., 1999); *Greer vs. Mitchell*, 264 F.3d 663, 675-681 (6th Cir.).

Reasonable jurists could differ as to this portion of the ineffective claims. John Fautenberry respectfully requests this Court to issue a COA on this issue.

2.    The Trial Court Forced John Fautenberry To Proceed To Trial Wearing Jail Garb and Shackles.

John Fautenberry was forced to attend his no contest plea hearing (which is the equivalent to a trial in the State of Ohio) and his sentencing hearing while wearing jail garb and shackles. Requiring a defendant to proceed to trial while shackled and in jail garb violates the Fourteenth Amendment. Holbrook vs. Flynn, 475 U.S. 560, 567 (1986); Rhodes vs. Rowland, 154 F.3d 1034, 1037 (9th Cir., 1998). The Supreme Court recently precluded the use of shackling in the sentencing phase of a capital case. Deck vs. Missouri, 125 S.Ct. 2007. Two of the three reasons the Court cited to preclude shackling apply equally to trials to a jury of a court. See Opinion §III(A).[1]

This Court rejected this argument by citing to a presumption that judges will not be negatively impacted by the sight of shackles or jail garb. [Decision, p. 180]. The Court relied upon authority from the Fifth, Seventh and Tenth Circuits. [Id.]. Thus, this issue is still unresolved in the Sixth Circuit.

John Fautenberry respectfully requests the Court to issue a COA on this issue.

3.    There Was Insufficient Evidence To Support The Trier Of Fact's Guilty Verdict As To Aggravated Murder And The Attached Specification.

In the State of Ohio, the prosecution in capital cases when the defendant pleads no contest or guilty is still required to prove his guilt by proof beyond a reasonable doubt. Ohio Crim. R. 11(C); State vs. Green, 689 N.E.2d 556, 559-560 (1998). The prosecution offered no testimony and as a result, there was a total failure of proof.

---

[1]There still does not exist a published opinion in Deck in which there is page pagination.

-31-

In the State of Ohio, to be entitled to a guilty verdict, the prosecution must prove venue by proof beyond a reasonable doubt. _State vs. Headley_, 453 N.E.2d 716, 718 (1983); _State vs. Draggo_, 418 N.E.2d 1343, 1345 (1981). In his oral unsworn statement to the Court, and the exhibits referenced therein, the prosecution did not offer sufficient evidence as to the state and county where the murder occurred.

The Court, in its decision, did not address the first point, the total lack of evidence. [Decision, pp. 182-184]. This is a significant issue. _State vs. Green_, 689 N.E.2d at 558-560. The Sixth Circuit has yet to address this argument.

As to venue and jurisdiction issue, there was a substantial question as to whether the offense occurred in Kentucky or Ohio. [Traverse Exhibits 9-11, 33].

John Fautenberry respectfully requests this Court to issue a COA as to this portion of the appellate ineffective grounds for relief.

4.    Trial Counsel Did Not Reasonably Advise John Fautenberry Concerning His No Contest Pleas.

John Fautenberry was entitled to the effective assistance of counsel with respect to no contest pleas. _McMann vs. Richardson_, 397 U.S. 759, 770 (1970); _Tollet vs. Henderson_, 411 U.S 256, 266 (1973). The Sixth Circuit in a long line of cases has held that counsel's performance is deficient when counsel provides a defendant with inaccurate advice concerning the entrance of a guilty plea. _Sparks vs. Sowders_, 880 F.2d 882, 885 (6th Cir., 1988); _Warner vs. United States_, 975 F.2d 1207, 1214 (6th Cir., 1992); _Magna vs. Hofbauer_, 263 F.3d 542, 549 (6th Cir., 2001); _Lyons vs. Jackson_, 299 F.3d 588, 593-594 (6th Cir., 2002); _Miller vs. Straub_, 299 F.3d 570, 575-576 (6th Cir., 2002).

That Court has recently held that trial counsel's duty to consult with the client and

to provide complete and accurate information is "paramount" when the client has to decide to forego a personal right such as pleading guilty or waiving a jury. _Miller vs. Straub_, 299 F.3d at 580; _Lyons vs. Jackson_, 299 F.3d at 580. That Court in both cases stressed that when personal rights are involved, counsel must insure that the defendant's decision is as informed as possible. The Court concluded in both cases "failing to consider, let alone notify the client of a factor that could negate the entire benefit of the guilty plea, is not within the range of professional norms.". [Id.].

This Court did not reach the merits of this issue solely because the claim "does not appear on the face of the record... appellate counsel cannot be faulted for failing to raise on direct appeal a claim that did not appear on the trial record.". [Decision, pp. 185-186]. The Sixth Circuit has rejected this logic. _Mapes vs. Coyle_, 171 F.3d 408, 425 (6th Cir., 1999); _Green vs. Mitchell_, 264 F.3d 663, 675-681 (6th Cir, 2001).

John Fautenberry respectfully requests this Court to issue a COA as to this issue.

**III.    CONCLUSION**.

The aforementioned issues are debatable among jurists of reason and "deserve encouragement to proceed further.".  Thus, John Fautenberry respectfully requests this Court to issue a certificate of appealability on these habeas grounds for relief.

Respectfully submitted,

_____
Dennis L. Sipe, #0006199
BUELL & SIPE CO., L.P.A.
322 Third Street
Marietta, OH 45750
(740) 373-3219 (Phone)
(740) 373-2892 (Fax)

W. Joseph Edwards
495 South High Street
Suite 100
Columbus, OH 43215
(614) 224-8166 (Phone)

Counsel for Petitioner,
 John Fautenberry

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing *John Fautenberry's Motion for a Certificate of Appealability* was filed electronically on this 10th day of June, 2005. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

_____

Dennis L. Sipe
Counsel for Petitioner,
  John Fautenberry