IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN FAUTENBERRY**, | : | |
| Petitioner, | : | **Case No. 1:00-CV-00332** |
| vs. | : | **Judge James L. Graham** |
| **BETTY MITCHELL, WARDEN,** | : | Mag. Judge Terence P. Kemp |
| Respondent. | : | |

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY**

Now comes Respondent Betty Mitchell in opposition to Petitioner's request for a certificate of appealability. A memorandum of law in support of her opposition follows.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General of Ohio

s/Gregory A. Perry

Gregory A. Perry (0065251)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055
**COUNSEL FOR RESPONDENT**

**MEMORANDUM**

**Statement of the Case**

Petitioner John Fautenberry (hereinafter "Petitioner" or "Fautenberry") is under sentence of death. On April 11, 2005, this Court entered an Entry and Order denying Petitioner's petition

for a writ of habeas corpus. On June 10, 2005, Petitioner filed a Request for a Certificate of Appealability, to which the Warden now responds.

## Statement of Facts

The facts surrounding Petitioner's indictment, trial, conviction and sentence were concisely set forth as follows in the opinion of the Ohio Supreme Court:

> During 1990, [Fautenberry] worked as a cross-country truck driver for a company based in Portland, Oregon. In the early part of November 1990, [Fautenberry] informed one of his supervisors that he was quitting his job because of the long hours that were required of him as a truck driver. Thereafter, [Fautenberry] spent a few days at the Flying J Truck Stop in Portland loading and unloading trucks for money. It was at that time that [Fautenberry] met Donald Nutley. On one occasion, Nutley, who possessed several firearms, invited [Fautenberry] to go target shooting with him. The two drove to an area near Mt. Hood, Oregon, where they proceeded to fire at bottles until approximately sunset. As they walked back to Nutley's vehicle, [Fautenberry] fired a single, fatal .38 caliber round into the right side of Nutley's head. [Fautenberry] then stole approximately $ 10,000 in cash from his victim and dumped the body somewhere in the Mt. Hood area. Nutley's body was not located until April 1991.
>
> In early February 1991, [Fautenberry] was traveling from Rhode Island to Ohio when he arrived at the Pilot Truck Plaza in Hunterdon County, New Jersey. [Fautenberry], out of money and in need of gasoline in order to continue his trip, met Gary Farmer, who allegedly offered to provide [Fautenberry] with food and money in exchange for sex. Upon entering Farmer's truck, [Fautenberry] fatally shot Farmer once in the head with a .22 caliber handgun. [Fautenberry] left the body in the truck, stole the victim's wallet, and completed his trip to Cincinnati, Ohio.
>
> After spending some time in Cincinnati, [Fautenberry] left his sister's home on February 17, 1991, with no money, no transportation, and, it appears, a desire to travel to Oregon. [Fautenberry] began hitchhiking on Interstate 275 when Joseph William Daron, a father of two young children, stopped his vehicle and offered [Fautenberry] a ride. [Fautenberry] explained that he was trying to reach Columbus. Daron offered to drive [Fautenberry] approximately twenty miles out of his way to a restaurant near the junction of Interstate 71, where [Fautenberry] believed he might better be able to find a ride to Columbus. Upon reaching the restaurant, [Fautenberry] exited Daron's vehicle, reached back into the car and shot Daron twice in the right side of his chest with the same .22 caliber handgun that he had used to kill Farmer. After the shooting, [Fautenberry] drove to a wooded area on the north bank of the Ohio River, where he threw Daron's body.

[Fautenberry] then used Daron's vehicle, credit cards, and cash to return to Oregon.

[Fautenberry] arrived in Portland, Oregon, on February 24, 1991, and went to a local bar to meet a friend, Wes Halbrook. Several people, including Christine Guthrie, were invited to join the two men at Halbrook's apartment for a private party. The following day, [Fautenberry] and Guthrie traveled to Rockaway, Oregon, where they spent a few days at the Silver Sands Motel. On the return trip to Portland, [Fautenberry] drove Guthrie to a wooded area, where [Fautenberry] claimed they would find something of interest. The two walked into the woods on foot and [Fautenberry] fired three shots from his Jennings J 22 pistol into the back of Christine Guthrie's head. [Fautenberry] then took the victim's bank credit card and address book containing the personal identification number for the credit card, left the body in the woods, and returned to Portland, where he used the credit card to make cash withdrawals. Guthrie's body was not discovered until April 1991.

In early March 1991, [Fautenberry] traveled to Juneau, Alaska. While there he spent his time working on a fishing boat and consuming large quantities of alcohol. [Fautenberry] met Jefferson Diffee at some point during this period. On March 13, 1991, [Fautenberry] accompanied Diffee to the latter's apartment, where [Fautenberry] beat, handcuffed and fatally stabbed Diffee seventeen times. Shortly thereafter, [Fautenberry] was arrested by the Alaska police. He ultimately pled guilty to the charge of first-degree murder in connection with Diffee's death, and received the maximum sentence available under Alaska state law: ninety-nine years' confinement without parole eligibility.

Shortly after his arrest by the Alaska police, [Fautenberry] made four separate statements to various law enforcement officers concerning his involvement with the five murders. [Fautenberry] spoke to the police in detail concerning the sites of the murders, the manner in which he had carried out the killings, and the locations where the police could find the victims' bodies.

After finding [Fautenberry] guilty of all counts and specifications in connection with Daron's murder, the Hamilton County three-judge panel conducted a mitigation hearing on September 14, 1992. The panel unanimously sentenced Fautenberry to death. Consecutive sentences were imposed for the other offenses, except those which were merged. The court of appeals affirmed [Fautenberry]'s convictions and sentence of death.

*State v. Fautenberry*, 72 Ohio St. 3d 435, 650 N.E.2d 878 (1995).

## Argument

### FAUTENBERRY'S CLAIMS DO NOT WARRANT A CERTIFICATE OF APPEALABILITY.

Prior to enactment of the Anti-terrorism and Effective Death Penalty Act (AEDPA), state prisoners denied a writ of habeas corpus by a district court were required to obtain a certificate of probable cause before an appeal could be taken to the court of appeals. 28 U.S.C. 2253, Act of June 25, 1948, 62 Stat. 967. The statute did not explain the standards for issuance of a certificate. In *Barefoot v. Estelle*, 463 U.S. 880 (1983), the United States Supreme Court recognized the intent of Congress, in requiring a petitioner to obtain a certificate of probable cause to appeal, "to prevent frivolous appeals from delaying the State's ability to impose sentences, including death sentences." *Id.* at 892. The Supreme Court then described as follows the standards to be applied in determining whether a habeas corpus petitioner should be permitted to appeal an unfavorable decision by a district court:

> We agree with the weight of opinion in the Courts of Appeal that a certificate of probable cause requires petitioner to make a "substantial showing of the denial of [a] federal right." *Stewart v. Beto*, 454 F.2d 268, 270, n.2 (CA5 1971, *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed. 2d 126 (1972). See also *Ramsey v. Hand*, 309 F.2d 947, 948 (CA10 1962). [footnote 4] In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuance of a certificate.

[Footnote 4] The following quotation cogently sums up the standard:

> "In requiring a 'question of some substance,' or a 'substantial showing of the denial of [a] federal right,' obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Gordon v. Willis*, 516 F.Supp. 911, 913 (ND Ga. 1980) (citing *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (CA2), *cert. denied*, 355 U.S. 846, 78 S.Ct. 71, 2 L.Ed. 2d 56 (1957).

*Id.* at 893-894.

Effective April 24, 1996, the AEDPA amended Section 2253 to provide, among other things, that a certificate of appealability may issue to permit an appeal by a habeas corpus petitioner, upon the petitioner's "substantial showing of the denial of a constitutional right." The certificate of appealability must indicate which specific issue or issues satisfy the required showing. *See* Title 28, U.S.C. Section 2253 (c). The AEDPA amendments apply to Petitioner's case. *Slack v. McDaniel*, 529 U.S. 473 (2000) (AEDPA's changes in appellate procedures applicable to all cases in which an appeal has been initiated by a petitioner subsequent to the statutory amendments). The consensus opinion of the Courts of Appeal is that the standard for issuance of a certificate of appealability is the same standard for issuance of a certificate of probable cause under pre-AEDPA law. *See Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997), and the cases cited therein. Accordingly, the standard set forth in *Barefoot v. Estelle, supra*, is the appropriate standard for review of Petitioner's application.

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petitioner states a valid claim of denial of a constitutional right." *Slack*, 529 U.S. at 484. In other words, a petitioner has the burden of showing that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If the district court dismisses a claim on procedural grounds without reaching the constitutional question, the petitioner must show that jurists of reason would find it debatable whether the district court correctly decided the procedural ruling. *Slack*, 529 U.S. at 484.

In his request, Petitioner has identified nine claims for relief (the second, fourth, fifth, seventh, ninth, eleventh, twelfth, fourteenth and fifteenth claims of his petition) which he argues are reasonably debatable, and therefore are a sufficient basis for a certificate of appealability as

5

to those issues. Respondent has fully addressed those claims in her Return of Writ, and this Court has comprehensively analyzed them in its Opinion and Order before concluding they were without merit. Respondent fully supports the Court's analyses and conclusions with respect to these issues, and therefore in the interests of brevity will not repeat them here.

In this case, this Court engaged in a *de novo* review of the record and concluded that Petitioner's claims did not make a substantial showing that he had been denied a constitutional right. Respondent submits that the Court's reasoning and conclusions are not only sound, but also beyond reasonable debate. Accordingly, Respondent urges this Court to deny Petitioner's request for a certificate of appealability on the issues raised in his petition for a writ of habeas corpus.

## Conclusion and Request for Relief

For all the foregoing reasons, the Court correctly determined that Petitioner's case presents no issues worthy of appeal. Accordingly, the Warden asks that the Court deny Petitioner's request for a certificate of appealability.

    Respectfully submitted,

    JIM PETRO (0022096)
    Attorney General of Ohio

    s/Gregory A. Perry

    Gregory A. Perry (0065251)
    Senior Assistant Attorney General
    Capital Crimes Section
    30 East Broad Street, 23rd Floor
    Columbus, Ohio 43215-3428
    (614) 728-7055
    **COUNSEL FOR RESPONDENT**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Memorandum in Opposition to Petitioner's Request for Certificate of Appealability has been forwarded electronically and by first-class U.S. Mail, postage prepaid, this 29th day of June 2005, to the following:

    Dennis L. Sipe, dennis@buellsipe.com
    Buell and Sipe Co. LPA
    322 Third Street
    Marietta OH 45750
    (740) 373-3219 (Phone)
    (740) 373-2892 (Fax)

    W. Joseph Edwards, jedward5@columbus.rr.com
    495 South High Street
    Suite 100
    Columbus OH 43215
    (614) 224-8166

    Counsel for Petitioner

                                s/Gregory A. Perry
                                Gregory A. Perry (0065251)