**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN FAUTENBERRY,**

      **Petitioner,**

  **v.**                                  **Case No. 1:00-cv-332**
                                                 **JUDGE GRAHAM**

**BETTY MITCHELL, Warden,**           **Magistrate Judge Kemp**

      **Respondent.**

<u>**OPINION AND ORDER**</u>

Final judgment dismissing petitioner's death penalty habeas corpus petition was entered on April 11, 2005. (Doc.No. 104). Petitioner filed a notice of appeal on May 11, 2005. (Doc.No. 105). This matter is before the Court upon petitioner's motion for a certificate of appealability (doc.no. 109), respondent's memorandum in opposition (doc.no. 110), and petitioner's reply in support (doc.no. 111).

In an *Opinion and Order* filed on December 26, 2001, this court determined that seven of petitioner's claims were procedurally defaulted, specifically, petitioner's grounds for relief numbers 1, 6, 8, 9(B) and (C), 10, 11(B) and (C), and 13(C). In regard to two additional claims, grounds for relief numbers 4 and 9(A), the court found that petitioner might be able to demonstrate cause and prejudice to excuse the apparent default of those claims, and the court deferred consideration of whether those claims were defaulted. The court also deferred ruling on whether petitioner's claim of ineffective assistance of appellate counsel set forth in ground fourteen was procedurally defaulted. The court dismissed without prejudice petitioner's seventeenth ground for relief, which concerns his mental competency to be executed, concluding that this claim was premature. On April 11, 2005, this Court issued an *Opinion and Order* denying as procedurally defaulted claims 4, 9(A), and

14, denying the remainder of petitioner's claims on the merits, and dismissing his habeas corpus

action.  (Doc.No. 103).

Petitioner seeks to appeal the denial of his habeas corpus petition and, to that end, filed a

notice of appeal on May 11, 2005, and a motion for a certificate of appealability on June 10, 2005.

An appeal from the denial of a habeas corpus action may not proceed unless a circuit justice or judge

issues a certificate of appealability.  28 U.S.C. §2253(c)(1).  To warrant a certificate of appealability,

a petitioner must make a substantial showing that he was denied a constitutional right.  28 U.S.C.

§2253(c)(2); *see also Barefoot v. Estelle*, 463 U.S. 880 (1983); *Lyons v. Ohio Adult Parole*

*Authority, et al.*, 105 F.3d 1063 (6th Cir. 1997).  He need not demonstrate that he will prevail on the

merits; he needs only to demonstrate that the issues he seeks to appeal are deserving of further

proceedings or are reasonably debatable among jurists of reason.  *Barefoot*, 463 U.S. at 893 n.4.

"Where a district court has rejected the constitutional claims on the merits, the showing required to

satisfy 28 U.S.C. §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000).

This analysis should also be applied when the Court has denied a claim on procedural

grounds.  *Id*., at 483; *see also Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001).  When the Court

dismisses a claim on procedural grounds, a certificate of appealability is warranted when petitioner

demonstrates (1) that jurists of reason would find it debatable whether the petition states a valid

claim and (2) that jurists of reason would find it debatable whether the district court was correct in

its procedural ruling.  *Slack*, 529 U.S. at 484.

Petitioner seeks a certificate of appealability on his second, fourth, fifth, seventh, ninth,

eleven, twelfth, fourteenth, and fifteenth grounds for relief.

> Second Ground for Relief: Mr. Fautenberry's convictions and sentences are invalid because his lead trial counsel labored under a conflict of interest in his dual role of attorney for John Fautenberry and trustee for Anderson Township, the political subdivision in which the decedent's body was found.

In requesting a certificate of appealability for his second ground relief, petitioner explains that his lead attorney, Michael Walton, served as a trustee for the township in which the victim's body was discovered. According to petitioner, Mr. Walton's duties as a trustee included contracting with the Hamilton County Sheriff's Department to provide law enforcement services for the township, which services would have included the investigation of the murder offense with which petitioner was charged. Further, according to petitioner, Mr. Walton, in his role as a trustee, was represented by the Hamilton County Prosecutor's Office in an unrelated civil suit. Mr. Walton's dual role as an Anderson Township trustee and lead counsel in this murder case, petitioner argues, amounted to an actual conflict of interest.

In denying petitioner's second ground for relief, this Court concluded that the state court of appeals' decision rejecting petitioner's claim in postconviction was not contrary to or an unreasonable application of clearly established federal law and did not involve an unreasonable determination of the facts based on the evidence that was presented. The state court of appeals explained that absent evidence of an actual conflict of interest, which evidence was completely lacking in this case, there is no presumption of prejudice arising from the mere fact that defense counsel also served in some capacity as a public official. The state court of appeals further held that defense counsel's failure to divulge his dual role to the state trial court in this case did not establish a constitutional violation because there was no showing of prejudice. This Court agreed, and noted that Mr. Walton, in his role as a township trustee, had no direct involvement in the investigation and

3

prosecution of the murder offense, had no direct supervision over the law enforcement agency contracted to serve the township, and exhibited no bias stemming from the fact that the Hamilton County Prosecutor's Office had represented him in an unrelated civil matter.

In light of petitioner's arguments that the cases upon which this Court relied are distinguishable and that there is a paucity of Sixth Circuit cases addressing this precise conflict-of-interest scenario, as well as the importance of the Constitutional rights implicated by this claim, the Court is satisfied that petitioner has made a substantial showing that he was denied a constitutional right and that reasonable jurists could find this issue debatable or wrong, sufficient to warrant certification under 28 U.S.C. §2253(c)(2). Petitioner's motion to certify his second ground for relief is GRANTED. Accordingly, the Court certifies the following issue for appeal:

> **1. Are Petitioner Fautenberry's convictions and sentences invalid under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because his lead trial counsel labored under a conflict of interest in his dual role of attorney for petitioner and trustee for Anderson Township, the political subdivision in which the decedent's body was found?**

> <u>Fourth Ground for Relief</u>: Mr. Fautenberry's convictions and sentences are constitutionally infirm because the trial prosecutors suppressed material exculpatory and impeachment evidence.

The Court concluded that petitioner had defaulted his fourth ground for relief and that he had failed to demonstrate cause and prejudice sufficient to excuse the default. In so holding, the Court also essentially rejected petitioner's *Brady* claim on the merits.

Petitioner argued in his fourth ground for relief that the trial prosecutors suppressed material, exculpatory and impeachment evidence in violation of the constitutional rights discussed in *Brady v. Maryland*, 373 U.S. 83 (1963). In its *Opinion and Order* of December 26, 2001, (doc.no. 52), this Court concluded that petitioner's claim had never been presented to the state courts, but that the

Court would defer until after discovery the determination of whether petitioner's claim was barred by procedural default.

On December 4, 2000, this Court granted petitioner's motion to review certain records and, on November 29, 2001, this Court granted petitioner's motion for limited discovery. On April 30, 2002, this Court granted petitioner's motion to compel discovery, pursuant to which respondent submitted certain grand jury materials for *in camera* review to determine whether they contained material, exculpatory or impeachment evidence. On October 28, 2002, the Magistrate Judge issued a *Report and Recommendation* concluding that the grand jury transcripts did not contain material exculpatory or impeachment evidence and would, therefore, remain under seal. This Court affirmed the Magistrate Judge's ruling on December 19, 2002. Notwithstanding petitioner's inability to review the grand jury transcripts, due to the determination by this Court that those transcripts contained no material, exculpatory or impeachment evidence, petitioner was able to review countless other documents and materials in connection with the discovery order issued by this Court.

Petitioner urged the Court to consider the merits of his claim in spite of the fact that he never presented it to the state courts. Petitioner reasoned that the factual basis of the claim was not available to him earlier, due to the state's suppression of the materials that he only learned of for the first time through the discovery afforded by this Court. The determination of whether petitioner could demonstrate cause and prejudice, however, overlapped with the determination of whether petitioner could demonstrate the components of a *Brady* violation.

In his fourth ground for relief, petitioner argued that the prosecution suppressed favorable evidence material to the issues of culpability and punishment in violation of *Brady v. Maryland, supra,* (holding that suppression by the prosecution of evidence favorable to the accused violates

due process if the evidence is material to guilt or to punishment).  Petitioner offered five types of evidence that allegedly were suppressed in violation of *Brady*, which may be summarized as follows:

A.  Evidence that would have provided a basis to suppress incriminating statements made by petitioner to Alaska police.

B.  Evidence calling into question the state's assertion that the murder took place in Hamilton County or even in Ohio.

C.  Evidence suggesting that the victim may have taken his own life or contributed to his death due in part to his illicit use of drugs.

D.  Evidence concerning the sexual aspects of the crime, which could have been presented as mitigation evidence in light of evidence suggesting that petitioner suffered physical and sexual abuse as a child.

E.  Evidence regarding petitioner's questionable state of mind at the time of the murder.

In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court clarified that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule."  "A showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable, would constitute cause under this standard."  *Id.* at 222.  The withholding or concealment of evidence by state officials which prevents the defendant from reasonably discovering the factual or legal basis of a claim generally constitutes cause sufficient to excuse the procedural default.  *See, e.g., Amadeo v. Zant*, 486 U.S. 214, 222 (1988)(concealment by county officials of scheme to under represent minorities and women in master jury pool sufficed as cause to excuse procedural default of that claim).  Recently, the Court of Appeals for the Sixth Circuit added that, "In order to show cause, [the petitioner] must provide a substantial reason for the default that is external to him."  *Jamison v.*

*Collins*, 291 F.3d 380, 386 (6ᵗʰ Cir. 2002).

In support of his fourth ground for relief, petitioner cited to exhibits 5 - 32, which were submitted with his traverse. In the absence of more definitive proof, the Court assumed for purposes of its discussion of petitioner's fourth ground for relief that those documents had not been disclosed to defense counsel.

Of course, in addition to demonstrating cause for his procedural default, petitioner was also required to show that he was actually prejudiced by the claimed constitutional error. In the context of a *Brady* claim, a petitioner satisfies the prejudice requirement by showing that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 290 (1988)(quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

In the instant case, petitioner offered as "cause" for the default of his *Brady* claim the alleged *Brady* violation itself. That is, petitioner argued that the prosecution's failure to disclose the material, exculpatory evidence set forth in his fourth ground for relief prevented him from discovering, developing, or presenting his fourth claim until habeas corpus. The Supreme Court addressed the same scenario in *Strickler*. At least one Judge within this district has also addressed the same scenario. *Jamison v. Collins*, 100 F. Supp. 2d 647 (S.D. Ohio 2000)(Spiegel, J.), *aff'd*, 201 F.3d 380 (6ᵗʰ Cir. 2002) . To determine whether petitioner could demonstrate cause and prejudice to excuse his failure to present his fourth claim for relief to the state courts, this Court had to determine whether, (1) favorable evidence existed, (2) that was suppressed by the prosecution, (3) that was so material as to either guilt or punishment that petitioner was prejudiced by its omission. Evidence is material within the meaning of *Brady* if it cannot be said that petitioner received a fair

7

trial, "understood as a trial resulting in a verdict worthy of confidence," in the absence of that evidence. *Strickler*, 527 U.S. at 289-90 (quoting *Kyles, supra*, 514 U.S. at 434).

The determination of whether the suppressed evidence was favorable and material was complicated in this case by the fact that petitioner had entered a no contest plea. In *Campbell v. Marshall*, 769 F.3d 314, (6th Cir. 1985), the Sixth Circuit suggested that, in the context of a habeas corpus proceeding, a state defendant may raise, after a guilty plea, a claim that prosecutors withheld exculpatory evidence in violation of *Brady*.[1] However, a defendant so situated faces an uphill battle in establishing the favorability and materiality components of the *Brady* test. In the context of a guilty plea, the Sixth Circuit framed the relevant determination as follows: "[D]id the prior withholding of the *Brady* information so taint the plea-taking as to render the guilty plea involuntary or unintelligent?" *Id.* at 315.

Ultimately, after carefully considering the five categories of allegedly suppressed evidence at the heart of petitioner's *Brady* claim, this Court concluded that none of the exhibits cited by petitioner were so favorable and material as to undermine confidence in the judgment against him. Thus, the Court concluded that petitioner had not established the prejudice prong of the cause-and-prejudice test to excuse the default of his *Brady* claim. *Strickler, supra*, 527 U.S. at 282. The Court concluded that petitioner's fourth ground for relief was procedurally defaulted and that petitioner failed to demonstrate cause and prejudice sufficient to excuse the default. In the alternative, the Court found that petitioner's fourth ground for relief was without merit.

The Court devoted considerable attention to the allegedly suppressed documents submitted by petitioner, as well as to the state court record. Given the significance of this issue to petitioner's

---

[1]    For purposes of this discussion, it is immaterial that petitioner entered a no contest plea, as opposed to a guilty plea.

case, as well as the fact-intensive nature of this Court's decision, the Court is satisfied that petitioner has made a substantial showing that he was denied a constitutional right and that reasonable jurists could find this issue debatable or wrong, sufficient to warrant certification under 28 U.S.C. §2253(c)(2).

Regarding the Court's ruling that petitioner's claim was procedurally defaulted due to his failure to present his *Brady* claim to the state courts and that petitioner could not establish cause to excuse the default, the Court is satisfied that jurists of reason would find it debatable whether this Court was correct in its procedural ruling, given the fact that the procedural ruling was so intertwined with and dependent on the merits of petitioner's allegations of a *Brady* violation. *Slack*, 529 U.S. at 484. Petitioner's motion to certify his fourth ground for relief is GRANTED. Accordingly, the Court certifies the following issues for appeal:

**2.   Are Petitioner Fautenberry's convictions and sentences constitutionally infirm because the trial prosecutors suppressed material exculpatory and impeachment evidence?**

**2(a).  Did the district court err in determining that petitioner's fourth ground for relief was procedurally defaulted?**

Fifth Ground for Relief: Mr. Fautenberry's convictions and sentences are constitutionally infirm because his waiver of his right to a jury trial in both phases of the proceedings was not knowingly, intelligently, and voluntarily entered.

In denying petitioner's fifth ground for relief, the Court began its determination by examining in detail the allegations and evidence that petitioner presented to the state courts in postconviction, as well as the decisions by the state trial court and appellate court rejecting petitioner's claims and evidence. The Court concluded that the state courts' decisions were not contrary to or an unreasonable application of clearly established federal law, and that the state courts' factual determinations were not unreasonable based on the evidence presented. In so

holding, this Court noted that the state trial court's colloquy on petitioner's waiver of his right to a jury trial corrected any misconception that petitioner may have had about the fact that his guilt would be determined by a three-judge panel, that the trial court conducted a thorough colloquy with him, that petitioner stated under oath that he had had extensive conversations with his attorneys about waiving his right to jury trial, and that the written jury waiver form was valid. The Court further noted that there was no indication that petitioner would not have waived his right to jury, had he known about the various "jury" issues he would be forfeiting, that petitioner acknowledged in his affidavit that this attorneys had advised him about his right to withdraw his jury waiver, and that none of the evidence presented by petitioner was sufficient to overcome a record that demonstrated a knowing, intelligent, voluntary waiver. Finally, as to petitioner's allegation that his mental infirmities undermined the validity of his jury waiver, this Court noted that after numerous and extensive evaluations of petitioner's competency in the months and weeks leading up to his trial, there was no indication that he was not competent to waive his right to jury trial.

In urging the Court to certify this issue for appeal, petitioner argues essentially that the Court did not sufficiently address, individually or the cumulative impact of, the following factors that, according to petitioner, undermined the validity of his jury trial waiver: (1) petitioner's brain damage and other dehabilitating mental illnesses; (2) the break-down in petitioner's relationship with his attorneys; (3) the flawed jury waiver form that petitioner signed; and (4) the failure of the trial court's colloquy to remedy all of the flaws in the jury waiver form that petitioner signed. Petitioner argues that the Court, in rejecting his assertions of brain damage and other mental infirmities, relied too heavily on the trial court's determination that he was competent and failed to address the evidence of brain damage and mental infirmities that he presented. Petitioner further

10

argues that this Court failed to address sufficiently the two inadequacies in his written jury waiver form, to wit: (1) that he was not informed that his guilt would be determined by a three-judge panel as opposed to one judge; and (2) that he had a right to a jury for sentencing.

Given the importance of the constitutional rights implicated by this claim, as well as the fact-intensive nature of weighing against a trial record demonstrating a valid jury waiver the evidence that petitioner submitted in postconviction, the Court concludes that petitioner has demonstrated, under §2253(c)(1), that reasonable jurists could find this Court's conclusion debatable or wrong. Petitioner's motion to certify his fifth ground for relief is GRANTED.  Accordingly, the Court certifies the following issue for appeal:

**3.  Are Petitioner Fautenberry's convictions and sentences constitutionally infirm because his waiver of his right to a jury trial in both phases of the proceedings was not knowingly, intelligently, and voluntarily entered?**

<u>Seventh Ground for Relief</u>: Mr. Fautenberry's convictions and sentences are constitutionally infirm because his no contest pleas were not knowingly, intelligently, and voluntarily entered.

The Court addressed petitioner's seventh ground for relief along with his fifth ground for relief and determined for many of the same reasons that it rejected petitioner's fifth ground for relief that petitioner's no contest pleas were knowing, intelligent, and voluntary.  Thus, this Court held that the state courts' decisions concluding the same did not contravene or unreasonably apply clearly established Supreme Court precedent or involve an unreasonable determination of the facts based on the evidence presented.

Petitioner argues that this issue should be certified for appeal because the Court, in reiterating that petitioner was competent at the time he entered his no contest pleas, failed to address petitioner's precise assertion that his severe depression, paranoia, and brain impairment had

11

compromised his decision-making ability at the time he entered his no contest pleas.  Petitioner further argues that this Court erred in its conclusion that the record demonstrated that petitioner had been properly advised by the trial court and trial counsel regarding his no contest pleas.  Moreover, according to petitioner, this Court stated without authority that the error committed when the prosecutor failed to produce any evidence establishing petitioner's guilt was somehow cured by the trial court's acceptance of testimony during petitioner's mitigation hearing.  Finally, petitioner argues that no court has ever considered the combined effect on the validity of his no contest pleas his mental illnesses, his brain damage, the flawed advice by trial counsel, and the failure of the prosecution to present evidence establishing his guilt.

Given the importance of this issue to petitioner's case – petitioner was convicted of aggravated capital murder based on no contest pleas instead of following a full jury trial – as well as the fundamental constitutional rights involved and the fact-intensive nature of this claim, the Court is satisfied that petitioner has demonstrated, under §2253(c)(1), that reasonable jurists could find this Court's conclusion debatable or wrong.  Petitioner's motion to certify his seventh ground for relief is GRANTED.  Accordingly, the Court certifies the following issue for appeal:

**4.  Are Petitioner Fautenberry's convictions and sentences constitutionally infirm because his no contest pleas were not knowingly, intelligently, and voluntarily entered?**

Ninth Ground for Relief: Mr. Fautenberry's convictions and sentences are constitutionally infirm because counsel failed to provide him with the reasonable effective assistance during the trial phase.

In his ninth ground for relief, petitioner argued that he received ineffective assistance of counsel in connection with the trial phase of his capital case.  The habeas corpus petition set forth three sub-parts to this claim: (A)  trial counsel unreasonably failed to meaningfully investigate the

12

States's case; (B) trial counsel unreasonably advised Mr. Fautenberry to waive his right to a jury trial and plead no contest; and (C) trial counsel performed unreasonably at Mr. Fautenberry's guilty plea [hearing]. In its *Opinion and Order* of December 26, 2001, (doc.no. 52), this Court clearly held that sub-parts (B) and (C) were procedurally defaulted because petitioner had not preserved them in his Rule 26(B) applications to reopen his direct appeal, had not fairly presented them during his postconviction proceedings, and had not demonstrated cause and prejudice to excuse his default of the claims.

With respect to sub-part (A), the Court deferred until after discovery its determination of whether that sub-part was procedurally defaulted. The allegation set forth in sub-part (A), *i.e.*, that trial counsel failed to investigate the State's case, necessarily related to petitioner's allegation, set forth in claim four, that the state had failed to disclose material, exculpatory evidence. In its *Opinion and Order* of April 11, 2005 addressing the merits of petitioner's claims, (doc.no. 103), this Court determined, as it had with respect to the claimed *Brady* violations set forth in petitioner's fourth ground for relief, that petitioner had not demonstrated that the state's suppression of relevant, material and exculpatory evidence constituted cause and prejudice sufficient to excuse petitioner's failure to present these allegations of ineffective assistance of counsel to the state courts. Since the Court was not persuaded from the totality of the circumstances that the failure of the prosecution to turn over the traverse exhibits cited by petitioner undermined the constitutional validity of petitioner's no contest pleas, or, under *Kyles*, that those exhibits could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict upon petitioner's no contest pleas, the Court concluded that petitioner could not demonstrate that the suppressed documents were favorable or material. For the same reasons, the Court could not find that petitioner

had established cause and prejudice – i.e., the state's suppression of evidence in violation of *Brady* – sufficient to excuse his failure to present the ineffective assistance of counsel allegations set forth in sub-part A of his ninth ground for relief.  Thus, the Court dismissed sub-part (A) of petitioner's ninth ground for relief as procedurally defaulted.

Although petitioner's motion for a certificate of appealability is somewhat difficult to decipher as to his ninth ground for relief, it appears to the Court that he seeks a certificate of appealability on sub-parts (A) and (C).  Initially, the Court notes that petitioner is plainly mistaken in his assertion that "[t]he Court did not address the third component of the Ground for Relief." (Motion for a Certificate of Appealability, doc.no. 109, at 17).  As noted *supra*, the Court concluded in its *Opinion and Order* of December 26, 2001, at section IV.(E)(2), that sub-part (C) was procedurally defaulted due to petitioner's failure to preserve those allegations in his Rule 26(B) applications to reopen his direct appeals or to fairly present them during his postconviction proceedings.  (Doc.No. 52).  However, the Court is of the view that sub-part (C) states a valid constitutional claim and that reasonable jurists could find the Court's procedural ruling debatable or wrong.  *Slack*, 529 U.S. at 484.

In its *Opinion and Order* of December 26, 2001, denying sub-part (C) of petitioner's ninth ground for relief as procedurally defaulted, the Court concluded that petitioner had failed to preserve those allegations in his Rule 26(B) applications to reopen his direct appeals to the state court of appeals and Supreme Court of Ohio respectively, and that petitioner had failed to fairly present those allegations during his state postconviction proceedings.  The latter holding is one that reasonable jurists could find debatable or wrong; the former is not.  Even indulging petitioner every benefit of the doubt, reasonable jurists could not find debatable the Court's conclusion that petitioner failed

14

to preserve the trial counsel ineffectiveness allegations set forth in sub-part (C) to his ninth ground for relief in his Rule 26(B) applications to reopen his direct appeals in the state court of appeals and the Supreme Court of Ohio. Those applications raised claims of appellate counsel ineffectiveness that were factually related to, but legally distinct from, the trial counsel ineffectiveness claims at the heart of petitioner's ninth ground for relief. In other words, a Rule 26(B) application is the procedure in Ohio for raising claims of ineffective assistance of appellate counsel; thus, the only claims that are preserved in a Rule 26(B) application are claims of ineffective assistance of appellate counsel. Further, in this case, the state courts dismissed those applications on procedural grounds without reaching the merits of petitioner's claims. Finally, with the exception of the allegation that trial counsel failed to put the prosecution's case to adversarial testing, the allegations of trial counsel ineffectiveness set forth in petitioner's ninth ground for relief were not even included in his Rule 26(B) applications as instances of appellate counsel ineffectiveness. For all of these reasons, reasonable jurists could not find debatable this Court's conclusion that petitioner failed to preserve sub-part (C) in his Rule 26(B) applications for reopening.

However, reasonable jurists could find debatable or wrong the Court's conclusion that petitioner failed to fairly present during his state postconviction proceedings the trial counsel ineffectiveness allegations set forth in sub-part (C) of his ninth ground for relief. The Court concluded that petitioner had failed to fairly present those allegations in his postconviction action because although petitioner's postconviction action contained several allegations of ineffective assistance of trial counsel, and several challenges against the validity of his jury waiver and of his no contest pleas, it did not include a substantial claim establishing a nexus between the two. The Court is of the view that reasonable jurists could find debatable or wrong whether the various claims

15

that petitioner presented challenging the effectiveness of his attorneys and the various claims that he presented challenging the validity of his no contest pleas were sufficient to constitute fair presentment of the claim in sub-part (C) of his ninth ground for relief that his trial attorneys were ineffective for failing to require the prosecution to present evidence establishing his guilt. The Court is further of the view that petitioner's allegation states a valid constitutional claim.

With respect to sub-part (A) of petitioner's ninth ground for relief, the Court is of the view that those allegations constitute a valid constitutional claim and that reasonable jurists could find the Court's procedural ruling debatable or wrong. *Slack*, 529 U.S. at 484. As with the certification of petitioner's fourth ground for relief, the Court, in finding that sub-part (A) of petitioner's ninth ground for relief was procedurally defaulted, devoted considerable attention to the allegedly suppressed documents submitted by petitioner, as well as to the state court record. Given the significant issue that has been made of trial counsel's performance, as well as the fact-intensive nature of this Court's decision, the Court is satisfied that petitioner has made a substantial showing that he was denied a constitutional right and that reasonable jurists could find this issue debatable or wrong, sufficient to warrant certification under 28 U.S.C. §2253(c)(2).

Regarding the Court's ruling that petitioner's claim was procedurally defaulted because petitioner had not demonstrated that the state's suppression of relevant, material and exculpatory evidence constituted cause and prejudice sufficient to excuse petitioner's failure to present these allegations of ineffective assistance of counsel to the state courts, the Court is satisfied that jurists of reason would find it debatable whether this Court was correct in its procedural ruling, given the fact that the procedural ruling was so intertwined with and dependent on the merits of petitioner's allegations of a *Brady* violation. *Slack*, 529 U.S. at 484. Petitioner's motion to certify grounds nine

(A) and nine (C) is GRANTED.  Accordingly, the Court certifies the following issues for appeal:

**5.  Are Petitioner Fautenberry's convictions and sentences constitutionally infirm due to counsel's failure to provide him with reasonable effectiveness during the trial phase by failing to investigate the State's case?**

**5(a).  Did the district court err in determining that sub-part (A) of petitioner's ninth ground for relief was procedurally defaulted?**

**6.  Are Petitioner Fautenberry's convictions and sentences constitutionally infirm due to counsel's failure to provide him with reasonable effectiveness during the trial phase by failing in connection with the no contest plea to require the prosecution to prove Petitioner Fautenberry's guilt?**

**6(a).  Did the district court err in determining that sub-part (C) of petitioner's ninth ground for relief was procedurally defaulted?**

Eleventh Ground for Relief: John Fautenberry's death sentences are constitutionally infirm because the three judge panel admitted improper evidence in the penalty phase.

In his eleventh ground for relief, petitioner argued that the three judge panel admitted improper victim impact evidence during the sentencing phase of his trial.  Specifically, petitioner argued that the trial court erred in admitting:  (A) testimony regarding the sentencing recommendations of the victim's widow and of the investigating officer; (B) evidence of petitioner's purported future dangerousness; and (C) voluminous testimony concerning the facts and circumstances of all of the homicides.  The Court concluded in its *Opinion and Order* of December 26, 2001 that sub-parts (B) and (C) were procedurally defaulted because they had never been fairly presented to the state courts.  (Doc.No. 52).  Petitioner does not seek a certificate of appealability on those issues or the Court's procedural ruling.

The Court addressed sub-part (A) in its *Opinion and Order* of April 11, 2005, and concluded that the claim was without merit.  Specifically, this Court found nothing unreasonable or erroneous about the conclusion of the Supreme Court of Ohio that the trial court was correct in admitting

17

statements regarding the impact of the death of Joseph Daron, and that the trial court's improper admission of statements recommending that petitioner receive the maximum penalty did not constitute reversible error because there was no evidence that those statements were considered by the three-judge panel and because, absent evidence to the contrary, it is presumed that a three-judge panel, rather than a jury, will consider only admissible evidence. That is, this Court concluded that the decision by the Supreme Court of Ohio was not contrary to or an unreasonable application of *Payne v. Tennessee*, 501 U.S. 808 (1991), and that the factual determination by the Supreme Court of Ohio that the three-judge panel had not considered the improper statements recommending that petitioner receive the maximum penalty was entitled to a presumption of correctness.

In urging the Court to certify this issue for appeal, petitioner takes issue with the conclusion by the Supreme Court of Ohio that the three-judge panel had not considered the improperly-admitted recommendations by the victim's widow and investigating officer that petitioner receive the maximum penalty. Specifically, petitioner argues that the Supreme Court of Ohio erred in *presuming* that the three-judge panel had not considered the improper evidence. Petitioner also argues that, even assuming the death recommendations were admissible victim impact evidence, the status of admissibility of such evidence was in a state of flux at the time the Supreme Court of Ohio issued its decision. Petitioner's arguments concerning the debatable nature of these issues are well taken.

This Court concludes that reasonable jurists could find debatable or wrong the determination by this Court, and earlier by the Supreme Court of Ohio, that the trial court's improper admission of statements by the decedent's widow and the investigating officer did not constitute reversible error simply because there was no evidence from the trial record that the three-judge panel actually

18

considered those statements in deciding to sentence petitioner to death. Initially, it bears mentioning that neither the Supreme Court of Ohio, nor this Court, disagreed with petitioner's assertion that the statements at issue, *i.e.*, recommendations by the decedent's widow and the investigating officer recommending that petitioner receive the maximum sentence, were inadmissible under *Payne v. Tennessee, supra*, 501 U.S. 808. At issue was whether the Supreme Court of Ohio erred in determining that the improper admission of those statements was not reversible error. Such evidence, as petitioner points out, is "powerfully gut wrenching" and "can easily sway the sentencing phase deliberations in an arbitrary manner." (Petitioner's Motion for a Certificate of Appealability, doc.no. 109, at 19). Given the highly-charged nature of such evidence, and the fact that the evidence was inadmissible under *Payne*, reasonable jurists could find debatable or wrong whether it is proper to deem that evidence "harmless" by presuming from a record that does not indicate one way or the other that the sentencing authority – in this case, a three-judge panel as opposed to a jury – did not consider the evidence. Petitioner's motion to certify ground eleven (A) is GRANTED. Accordingly, the Court certifies the following issue for appeal:

> **7. Are Petitioner Fautenberry's death sentences constitutionally infirm because the three-judge panel admitted improper evidence in the penalty phase, to wit: statements by the decedent's widow and the investigating officer recommending that petitioner receive the maximum sentence?**

> <u>Twelfth Ground for Relief</u>: John Fautenberry's convictions and sentences are constitutionally infirm because the attorneys who represented him during the mitigation phase failed to provide reasonable effective assistance of counsel.

Petitioner argued in his twelfth ground for relief that his trial attorneys provided ineffective assistance during the penalty phase of his case. Specifically, according to petitioner, his trial attorneys (A) failed to conduct a reasonable investigation with respect to the penalty phase; (B) failed to retain all necessary experts; and (C) performed unreasonably in their presentation of

19

mitigation evidence. Petitioner raised a litany of allegations under each sub-part. The Court rejected

all three sub-parts of petitioner's twelfth ground for relief on the merits in its *Opinion and Order* of

April 11, 2005, (doc.no. 103). The Court essentially concluded that, based on the information that

defense counsel had available to them at the time and avoiding the distorting effects of hindsight,

defense counsel's performance was not objectively unreasonable. Further, the Court was careful to

note that different attorneys may have pursued a different mitigation strategy, but that the mitigation

strategy pursued by petitioner's defense attorneys was reasonable and was based on reasonable

investigation.

With respect to sub-part (A), the Court concluded that defense counsel had conducted a

reasonable mitigation-phase investigation. The Court noted that petitioner bore much of the blame

for the temporarily strained relationship between defense counsel and petitioner. The Court also

observed that petitioner provided no elaboration about the manner in which defense counsel

allegedly impeded the efforts of mitigation specialist Dr. Susan Shorr. Further, the Court determined

that defense counsel did, contrary to petitioner's assertion, follow up with his paternal grandparents

regarding their refusal to provide deposition testimony. The Court also noted that petitioner

provided no elaboration about what sort of information defense counsel allegedly failed to develop

during their interview with Olivia Herndon Priest about petitioner's commission of the offense or

how any such information would have been helpful. With respect to petitioner's allegations that

counsel failed to develop anecdotal evidence of head injuries suffered by petitioner through a

deposition of Kenneth Corcoran and/or a more thorough deposition of Louise Corcoran, the Court

determined that defense counsel performed reasonably based on information available to them at the

time regarding petitioner's mental health. Finally, the Court noted that while requesting and relying

upon a presentence investigation report prepared by the Adult Parole Authority may not be the best possible practice, it is not per se unreasonable on the part of defense counsel and was not prejudicial in petitioner's case.

With respect to sub-part (B), the Court concluded that defense counsel's performance was not objectively unreasonable as to petitioner's allegation that they failed to obtain a "defense" psychologist.  In so holding, the Court noted that no less than eight mental health evaluations had been performed on petitioner prior to his sentencing hearing and that petitioner bore the blame for his refusal to cooperate with a neuropsychological evaluation arranged by defense counsel, which evaluation *might* have produced evidence of mild brain impairment suffered by petitioner.  Thus, the Court concluded that, based on the information that was available to defense counsel at the time and avoiding the distorting effects of hindsight, defense counsel's performance with respect to obtaining experts was not objectively unreasonable.

With respect to sub-part (C), the Court rejected petitioner's assertion that trial counsel, due to their allegedly inadequate investigation, performed unreasonably in their presentation of mitigating evidence.  In rejecting petitioner's assertion that his trial attorneys were ineffective for failing to present evidence that he <u>did</u> suffer from a brain impairment and allowing testimony that he did <u>not</u> suffer from brain impairment, the Court reiterated that defense counsel acted reasonably based on the information that was available to them at the time indicating that petitioner did not suffer from brain impairment and that defense counsel could not be faulted for petitioner's refusal to cooperate with the neuropsychological evaluation that defense counsel had arranged and that *might* have revealed the mild brain impairment from which petitioner suffered.  The Court further found that, contrary to petitioner's assertions, defense counsel had offered evidence attempting to

link petitioner's chaotic upbringing and petitioner's abuse of drugs and alcohol to his commission of the offense.  As to petitioner's argument that counsel should have produced evidence linking petitioner's depression to the his commission of the offense, the Court observed that although different attorneys may have chosen to present such a theory, defense counsel in petitioner's case fashioned a reasonable mitigation strategy based on reasonable investigation.  Finally, as to petitioner's argument that defense counsel improperly elicited testimony regarding his alleged escape plan, this Court concluded that defense counsel had acted reasonably in attempting to rebut or diffuse the prosecution's introduction of that evidence and had managed to introduce some evidence or argument regarding petitioner's ability to adjust positively to incarceration.

In urging the Court to certify the ineffective assistance allegations set forth in his twelfth ground for relief, petitioner argues essentially that this Court failed, in applying the deficient-performance and prejudice components of the *Strickland* test, to consider relevant case law by the Supreme Court of the United States and the Court of Appeals for the Sixth Circuit, as well as the ABA guidelines for defense attorneys in capital cases.  Petitioner cites *Williams v. Taylor*, 529 U.S. 382 (2000); *Wiggins v. Smith*, 123 S.Ct. 2527 (2003); *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003); *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003); *Powell v. Collins*, 332 F.3d 376 (6th Cir. ); and *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005).  In his reply, petitioner cites to a new case decided by the Supreme Court of the United States, *Rompilla v. Beard*, 125 S.Ct. 2456 (2005), in which relief was granted on the claim of ineffective assistance of trial counsel during the sentencing phase.  The Court is, and was, fully aware of those decisions and the 1989 and 2003 ABA guidelines cited by petitioner; the Court simply was not of the view that petitioner was entitled to relief under them, or that petitioner would be entitled to relief under the Supreme Court's recent decision in

*Rompilla*.  However, the Court is of the view that reasonable jurists could find its disposition of petitioner's twelfth ground for relief debatable or wrong, given the fact-intensive nature of the Court's resolution of the issue; the importance of the issue to petitioner's case, insofar as he pleaded no contest to the capital murder charges apparently in an effort to devote all of his efforts to persuading the three-judge panel during the mitigation phase that he should not be sentenced to death; and the constantly-evolving body of case law regarding the issue of ineffective assistance of counsel during the sentencing phase of a capital case.  Petitioner's motion to certify his twelfth ground for relief is GRANTED.  Accordingly, the Court certifies the following issues for appeal:

> **8.  Is petitioner's death sentence constitutionally infirm because the attorneys who represented him during the mitigation phase failed to provide reasonably effective assistance of counsel in (A) failing to conduct an adequate investigation; (B) failing to obtain necessary experts; and (C) performing unreasonably and to petitioner's prejudice during his mitigation hearing?**

> <u>Fourteenth and Fifteenth Grounds for Relief</u>: John Fautenberry's convictions and sentences are constitutionally infirm because he was not afforded the effective assistance of counsel on his direct appeals of right to the Hamilton County Court of Appeals and to the Ohio Supreme Court.

In its *Opinion and Order* of December 26, 2001, (doc.no. 52), the Court determined that petitioner's fourteenth ground for relief appeared to be procedurally defaulted because petitioner had not presented his appellate counsel ineffectiveness claims to the Ohio Court of Appeals in a timely Rule 26(B) application for reopening of his direct appeal – the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  In its subsequent *Opinion and Order* of April 11, 2005, the Court rejected petitioner's cause-and-prejudice argument, *i.e.*, the ineffectiveness of the attorneys who had been charged with filing his Rule 26(B) application in a timely manner.  Specifically, the Court concluded, on the basis of the relative weakness of the appellate counsel ineffectiveness claims that petitioner had sought to present in his Rule 26(B) application, that even

assuming that petitioner's attorneys had timely filed his Rule 26(B) application to raise those particular claims of appellate counsel ineffectiveness, there was not a reasonable probability that petitioner's Rule 26(B) application would have been decided differently.

As to petitioner's fifteenth ground for relief, the Court determined in its *Opinion and Order* of December 26, 2001, that while petitioner's claim did not appear to be procedurally defaulted, the Court was not expressing any opinion as to the merits of the appellate counsel ineffectiveness claims set forth in ground fifteen or whether there even existed in Ohio a right to effective assistance of appellate counsel on a second appeal of right the Supreme Court of Ohio in death penalty cases. In its *Opinion and Order* of April 11, 2005, the Court assumed for purposes of the discussion that petitioner had a right to the effective assistance of counsel on a second appeal of right to the Supreme Court of Ohio, but ultimately rejected the appellate counsel ineffectiveness claims set forth by petitioner.

In urging the Court to certify these issues for appeal, petitioner focuses his arguments primarily on his fourteenth ground for relief. This Court will do the same. Under current Ohio law, defendants under sentence of death are entitled to only one appeal of right to the Supreme Court of Ohio, bypassing the intermediate state court of appeals. It is beyond dispute that, on that direct appeal of right to the Supreme Court of Ohio, capital defendants are constitutionally entitled to effective assistance of appellate counsel. At the time that petitioner appealed the judgment against him, defendants under sentence of death in Ohio were entitled to a first appeal of right to the intermediate state court of appeals and then a second appeal of right to the Supreme Court of Ohio. Even so, Ohio did not recognize a constitutional right to counsel, or a constitutional right to the effective assistance of counsel, during that second appeal of right. *State v. Buell*, 70 Ohio St. 3d

1211, 1212 (1994)("Having no constitutional right to counsel on a second appeal, Buell had no constitutional right to the effective assistance of counsel."). Petitioner has not cited, and this Court is not aware of, any case holding that there is or was a constitutional right to counsel, or a constitutional right to effective assistance of counsel, on that second appeal of right to the Supreme Court of Ohio. This Court is not persuaded, and petitioner has not seriously argued, that the issue is worthy of further review on appeal.

Citing *Richey v. Mitchell*, 395 F.3d 660, 679-680 (6th Cir. 2005), petitioner argues that this Court's determination that the appellate counsel ineffectiveness claims set forth in ground fourteen were procedurally defaulted is invalid because the Sixth Circuit has determined that the procedural rule at issue, *i.e.*, Rule 26(B), is inadequate. Petitioner goes on to reiterate the merits of the appellate counsel ineffectiveness claims that were defaulted by virtue of the failure of the attorneys who represented him during his Rule 26(B) proceedings to file a timely Rule 26(B) application to reopen his direct appeal. Because the basis for this Court's procedural default ruling has been in a constant state of flux, and in light of the prevailing view that appellate attorneys in death penalty cases should err on the side of inclusiveness, rather than selectivity, in raising and preserving issues on appeal, this Court is of the view that reasonable jurists could find that petitioner's fourteenth ground for relief states a valid constitutional issue and that reasonable jurists could find debatable or wrong this Court's procedural default ruling against petitioner's fourteenth ground for relief. *Slack v. McDaniel*, 529 U.S. at 484.

Initially, although it is true that this Court concluded that petitioner's fourteenth ground for relief was procedurally defaulted under Ohio R. App. P. 26(B) and that ineffective assistance of the attorneys who filed his untimely Rule 26(B) application did not constitute cause and prejudice to

25

excuse the default, this Court essentially determined that the appellate counsel ineffectiveness claims that had been defaulted were without merit. In so doing, the Court relied on the relative weakness of the trial issues that, in petitioner's view, appellate counsel should have raised, as well as the reasoning that some of the issues could not logically have been raised on direct appeal because they relied on evidence outside the trial record. As noted *supra*, however, appellate attorneys in death penalty cases arguably should err on the side of inclusiveness, rather than selectivity, in raising and preserving issues on direct appeal. Thus, this Court is of the view that reasonable jurists would find that petitioner's fourteenth ground for relief states a valid constitutional issue.

Regarding the adequacy of Ohio's Rule 26(B) application-for-reopening remedy, the particular issue that has been in a constant state of flux concerns the provision within the rule requiring applicants to demonstrate "good cause" for filing Rule 26(B) applications outside of the ninety-day limit. In *Richey v. Mitchell, supra*, 395 F.3d at 679-680, the Sixth Circuit held that the Rule 26(B) application-for-reopening remedy was not adequate in Petitioner Richey's case because at the time that Petitioner Richey filed his untimely Rule 26(B) application, the "good cause" requirement for filing untimely applications had not yet been applied with any consistency. The Sixth Circuit stated in *Richey* that "[w]e measure whether Rule 26(B) was 'firmly established and regularly followed by the time as of which it [was] to be applied.'" *Richey*, 395 F.3d at 680, quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Applying that to the instant case, this Court notes that the *Murnahan* decision that gave birth to the application-for-reopening remedy was issued in February 1992; that Rule 26(B) setting forth the application-for-reopening remedy became effective on July 1, 1993; that the court of appeals' decision affirming the judgment against Petitioner Fautenberry was journalized on February 9, 1994; and that Petitioner Fautenberry filed his Rule

26(B) application for reopening on July 24, 1996. Under *Richey*, the "good cause" requirement for filing untimely Rule 26(B) applications certainly was not firmly established or regularly followed in 1994 when the court of appeals' judgment against petitioner was journalized, but arguably was firmly established and regularly followed when Petitioner Fautenberry filed his Rule 26(B) application in 1996. *See Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002)(suggesting that the Supreme Court of Ohio had offered sufficient guidance about what did not constitute "good cause" in *State v. Reddick*, 72 Ohio St. 3d 88 (1995)). Still, in light of the constant state of flux surrounding this issue, reasonable jurists could find this Court's procedural ruling debatable or wrong.

Moreover, regarding this Court's determination that petitioner could, under *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), assert ineffective assistance of the attorneys who filed his untimely Rule 26(B) application as cause for the default of the appellate counsel claims that were defaulted due to the untimely filing, the Sixth Circuit recently held that there is no federal constitutional right to counsel in order to file a Rule 26(B) application for reopening a first appeal of right, overruling *White v. Schotten*. *Lopez v. Wilson*, – F.3d – , 2005 Fed.App. 0411P (6th Cir. Oct. 7, 2005)(*en banc*). Under *Lopez*, therefore, petitioner would not be able to assert ineffective assistance of his Rule 26(B) attorneys as cause for the untimely filing of his Rule 26(B) application. That being so, assessing the correctness of this Court's procedural default ruling is that much more important.

Petitioner's motion to certify his fourteenth ground for relief is GRANTED. For the foregoing reasons, the Court certifies the following issues for appeal:

**9. Are Petitioner Fautenberry's convictions and sentences constitutionally infirm because he was not afforded the effective assistance of counsel on his direct appeal of right to the Hamilton County Court of Appeals due to appellate counsel's failure to raise the following issues?**

**(1).    The Hamilton County officials discriminated on the basis of gender and race in selecting the foreperson for John Fautenberry's grand jury.**

**(2).    The trial court forced John Fautenberry to proceed to trial wearing jail garb and shackles.**

**(3).    There was insufficient evidence to support the trier of fact's guilty verdict as to aggravated murder and the attached specification.**

**(4).    Trial counsel did not reasonably advise John Fautenberry concerning his no contest pleas.**

**9(a).  Did the district court err in determining that Petitioner Fautenberry's Fourteenth Ground for Relief was procedurally defaulted due to petitioner's failure to file a timely Rule 26(B) application?**

<u>Conclusion</u>

For the foregoing reasons, the Court finds that the nine issues and sub-parts set forth above meet the standard for a certificate of appealability and are deserving of further review on appeal. Petitioner's motion for a certificate of appealability, (doc.no. 109), is GRANTED.

**IT IS SO ORDERED.**

s/James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE:  January 5, 2006

28