**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN FAUTENBERRY,**

    **Petitioner,**

   **v.**                             **Case No. 1:00-cv-332**
                                        **JUDGE JAMES L. GRAHAM**
**BETTY MITCHELL, Warden,**       **Magistrate Judge Terence P. Kemp**

    **Respondent.**

**ORDER**

Final judgment dismissing Petitioner's death penalty habeas corpus action was entered on April 11, 2005. (Doc. # 104.) The United States Court of Appeals for the Sixth Circuit affirmed this Court's decision on January 25, 2008, (Doc. # 113), and on October 14, 2008, the United States Supreme Court denied the petition for *certiorari* (Doc. # 117). Petitioner is scheduled to be executed on July 14, 2009. This matter is before the Court upon Petitioner's renewed motion for expert funding and request for a stay of execution (Doc. # 141), as well as Respondent's memorandum in opposition (Doc. # 145).

On June 1, 2009, this Court granted Petitioner's request to file *ex parte* and under seal a motion for funds to employ an expert. (Doc. # 123.) Petitioner filed that motion on June 2, 2009. (Doc. # 126.) On June 4, 2009, this Court issued an order confirming appointed counsel's continued representation of Petitioner. (Doc. # 128.) On June 17, 2009, Petitioner submitted *ex parte* and under seal a proposed clemency budget. (Doc. # 129.) On June 23, 2009, this Court issued *ex parte* and under seal an order denying Petitioner's motion for funds. (Doc. # 130.) Subsequently, on June 25, 2009, this Court issued *ex parte* and under seal an order approving Petitioner's proposed clemency budget relating to the compensation of counsel but as modified

by the Court excluding funding for experts. (Doc. # 131.)

Petitioner appealed to the Sixth Circuit this Court's decision denying his motion for funds and filed a notice of appeal on July 1, 2009. (Doc. # 133.) Petitioner has maintained that he requires funds for an updated neuropsychological evaluation for purposes of seeking state clemency. Although Petitioner's clemency hearing has already been conducted, he still intends to file a supplemented application for clemency directly to the Governor.

To that end, Petitioner sought a stay of execution from the Sixth Circuit, as well as from this Court. On July 10, 2009, the Sixth Circuit issued a decision affirming this Court's order denying Petitioner's 18 U.S.C. § 3599(f) request for expert funding and denying Petitioner's motion for a stay of execution. *Fautenberry v. Mitchell*, No. 09-3819 (6th Cir. July 10, 2009). In denying Petitioner's motion for a stay of execution, the Sixth Circuit observed that Petitioner had not "cited any legal authority upon which we could base a stay of the State's right to execute its judgment." *Id*. at p.7. The Sixth Circuit explained that although some federal intervention may be permissible to correct a clear violation of due process in state clemency proceedings, the Sixth Circuit was presented with no such situation in Petitioner's case.

On the basis of the Sixth Circuit's decision affirming this Court's order denying Petitioner's request for funds and denying his motion for a stay of execution, and on the basis of the Sixth Circuit's decision in *Bey v. Bagley*, No. 08-4569, 301 Fed. Appx. 442, 2008 WL 4911115 (6th Cir. Nov. 17, 2008), this Court found that there was no basis for it to grant Petitioner's motion for a stay of execution and denied the same on July 10, 2009. (Doc. # 140.)

This matter is now before the Court upon Petitioner's renewed motion for expert funding and request for a stay of execution. (Doc. # 141.) Also before the Court is Respondent's

memorandum in opposition. (Doc. # 145.) The issue before the Court, as it was when Petitioner filed his initial motion for expert funding, is twofold: first, whether Petitioner has demonstrated that funds are reasonably necessary as required by 18 U.S.C. § 3599(f), and second, whether § 3599(f) authorizes the expenditure of funds that are otherwise "reasonably necessary" for pursuit of state clemency proceedings.

Regarding the first query, 18 U.S.C. § 3599(f) permits this Court to authorize Petitioner's attorneys to obtain certain services on behalf of Petitioner, "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence...." Few cases exist defining what "reasonably necessary" means within the context of this statute.[1] "However, on the whole, the rulings appear very case-specific and the analyses fact-intensive." *Bradford v. Johnson*, 162 F.Supp.2d 578, 580 (N.D. Tex. 2001). It is within the district court's discretion to find that Petitioner has not demonstrated that funds are "reasonably necessary," and to deny a request for funding as a result, where the petitioner's request is based on "mere suspicion and surmise." *Patrick v. Johnson*, 48 F.Supp.2d 645, 647 (N.D. Tex. 1999); *see also Bell v. True*, 366 F.Supp.2d 403, 408 (W.D. Va. 2005) (denying request for funds where services would be duplicative and amount to a fishing expedition); *Delong v. Thompson*, 790 F.Supp. 594, 616-17 (E.D. Va. 1991) (denying request for funds where proposed investigation constituted a "fishing expedition"). In *Alley v. Bell*, 307 F.3d 380, 399 n.7 (6th Cir. 2002), the Court of Appeals for the Sixth Circuit affirmed the denial of a motion for funds for brain and genetic tests aimed at gathering additional evidence of mental impairment that counsel had failed to investigate

---

[1] Pursuant to the "USA PATRIOT Improvement and Reauthorization Act," the provisions of 21 U.S.C. § 848(q)(9) were replaced with identical provisions now set forth in 18 U.S.C. § 3599(f).

because Petitioner had failed to demonstrate how the tests were relevant to the only inquiry before the district court–namely, whether the state courts had reasonably applied federal law in holding that trial counsel had not provided ineffective assistance. On the other hand, a district court should grant a request for funds as reasonably necessary when "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Foust v. Houk*, No. 1:06 CV 2625, 2008 WL 162786, at *4 (N.D. Ohio Jan. 15, 2008) (citations and internal quotation marks omitted).

Petitioner filed the instant thirteen-page motion (Doc. # 141) on July 11, 2009. He supported it with seven exhibits consisting of the Sixth Circuit's decision affirming this Court's order denying Petitioner's initial request for expert funding, affidavits providing anecdotal evidence of brain injuries that Petitioner suffered during childhood and adulthood, a 1996 neuropsychological report by Dr. Jeffrey Smalldon, medical records documenting head and other injuries sustained by Petitioner, a 2001 article entitled "The Psychological Impact of Incarceration: Implications for Post-Prison Adjustment," a 1996 clinical psychological report by Dr. Sharon Pearson, and an eleven-page report by the Ohio Adult Parole Authority dated June 24, 2009 recommending by a vote of seven to zero that Ohio Governor Ted Strickland deny clemency. All but the article concerning the psychological impact of incarceration and the Ohio Adult Parole Authority's clemency report were a part of the record before this Court when it considered Petitioner's initial request for funding.

In the present motion, Petitioner reiterates many of the arguments that he made in his initial request for expert funding. Petitioner maintains that he suffers from brain impairment as

4

a result of significant head injuries that he suffered during his childhood and adulthood that caused his behavior to change, that his head injuries and the effects of those head injuries have been exacerbated by his lengthy history of alcohol and drug abuse, and that the type of brain impairment from which he suffers can cause serious problems in such areas of day-to-day functioning such as impulse control, modulation of affect, planning, problem-solving, and the capacity to tolerate frustration.  Petitioner also reiterates that the Sixth Circuit has recognized repeatedly that evidence of brain impairment can militate in favor of a sentence less than death.  (Doc. # 141, at 8 (citing *Glenn v. Tate*, 71 F.3d 1204, 1211 (6th Cir. 1995); *Coleman v. Mitchell*, 268 F.3d 417, 452 (6th Cir. 2001); *Powell v. Collins*, 332 F.3d 376, 394 (6th Cir. 2003); and *Harries v. Bell*, 417 F.3d 631, 639 (6th Cir. 2005)).)  Petitioner goes on to point out that Dr. Jeffrey Smalldon, after evaluating Petitioner in 1996, concluded that Petitioner does suffer from brain impairment.

Petitioner renews his motion for expert funding and request for a stay of execution in order to present arguments that this Court and the Sixth Circuit found he had failed to present initially demonstrating why funds for a new neuropsychological evaluation are reasonably necessary for Petitioner to seek clemency from the Governor of the State of Ohio.  Specifically, Petitioner argues that the results of Dr. Smalldon's 1996 evaluation are stale and instead of obviating the need for additional testing, confirm the need.  Petitioner argues that "[t]here is strong reason to believe that he is now psychologically different" than he was when he arrived on death row or when Dr. Smalldon evaluated him in 1996.  (Doc. # 141, at 4.)  In support, Petitioner argues that the psychological impact of prolonged incarceration, especially on death row, has been well-documented.  Petitioner asserts that the longer someone remains incarcerated,

the greater the likelihood that he will suffer psychological harm, especially if he suffers from mental illness already and is subject to the harshest prison conditions. In that regard, Petitioner argues that he has a long history of depression and that incarceration on death row is among the harshest, due to the isolation and restriction on activities. Petitioner argues the psychological experiences associated with incarceration on death row are known as "death row phenomenon" or "death row syndrome" and are well-documented.

Petitioner argues that Dr. Smalldon's thirteen-year-old evaluation of Petitioner does not possess sufficient reliability to enable the Ohio Adult Parole Authority and Ohio Governor Strickland to make a proper clemency decision. Petitioner argues that this Court, when it denied Petitioner's habeas corpus petition on the basis that Dr. Smalldon never expressly stated that Petitioner actually exhibited any of the behaviors consistent with brain damage and that neither Dr. Smalldon nor Dr. Pearson suggested that Petitioner lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, essentially found that Dr. Smalldon's report was incomplete. Petitioner goes on to argue that the Sixth Circuit likewise faulted Dr. Smalldon's report when it affirmed this Court's decision denying habeas relief. Petitioner argues that an updated evaluation would support commutation because brain impairment is relevant clemency evidence and because it would assist Petitioner in rebutting repeated arguments by the State during the clemency hearing that Petitioner did not suffer from any brain impairment. Finally, Petitioner points out that even Judge Moore, concurring with the Sixth Circuit's decision affirming this Court's order denying expert funding, stated that " '[b]ecause a current picture of [Petitioner]'s mental state clearly is important to determining whether he should be executed, an updated neuropsychological evaluation is

reasonably necessary for his representation.' " (Doc. # 141, at 10-11 (quoting Exhibit 1, p. 8, Moore, J., concurring).)

For the following reasons, this Court is constrained to find that Petitioner still has fallen short of demonstrating that funds to employ Dr. Gelbort to conduct an updated neuropsychological evaluation are reasonably necessary for Petitioner to pursue state clemency. After careful review of Petitioner's arguments, the materials that Petitioner submitted, and controlling authority, this Court concludes that Petitioner has failed to make a prima facie showing that some material information would be developed as a part of any new neuropsychological evaluation. The Court begins by noting that the neuropsychological evaluation conducted by Dr. Smalldon in 1996 strikes this Court as comprehensive. Dr. Smalldon's own report states that Petitioner was referred "for a comprehensive neuropsychological assessment." (Doc. # 141-4, at 16.) Dr. Smalldon's findings, based on an interview with Petitioner and a battery of tests, included that Petitioner was of average to above average intelligence and had accumulated a body of knowledge that exceeded the GED-level of education that he had achieved. Dr. Smalldon also found that Petitioner suffered from mild brain impairment stemming from head injuries that Petitioner received as early as six to eight years of age when he was struck in the head by a swing and as recently as his late teens when, while serving in the Navy, his head became lodged between a float and a boat.

It is true that this Court noted in its decision denying habeas relief that Dr. Smalldon had failed to state that Petitioner actually exhibited behaviors consistent with brain impairment or to suggest that Petitioner was unable due to brain impairment to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. That is *not*, however,

7

tantamount to a finding that Dr. Smalldon's 1996 report was incomplete, as asserted by Petitioner. (Doc. # 141.) This Court made no statement or suggestion questioning the comprehensiveness of Dr. Smalldon's 1996 evaluation or report.

With a neuropsychological evaluation in hand that this Court has no reason to regard as anything but comprehensive, Petitioner has failed to make any demonstration beyond pure speculation that anything in the thirteen years that have elapsed since Dr. Smalldon conducted his neuropsychological evaluation necessitates an updated evaluation. Petitioner has given no reason–actually, anecdotally, or even theoretically–to believe that there has been a change in the neuropsychological condition or brain impairment diagnosed by Dr. Smalldon and accepted by this Court as true. Petitioner asserts that the passage of time, combined with the psychological anguish described as "death row phenomenon" or "death row syndrome," amounts to proof that Dr. Smalldon's 1996 neuropsychological evaluation is outdated and unreliable. The Court disagrees. The fact that the brain impairment that Dr. Smalldon diagnosed in 1996 appears to have resulted from head injuries that Petitioner suffered ten to twenty-five years earlier belies any suggestion that the passage of time, even if exacerbated by other psychological conditions or stressors, can affect a change in diagnosed brain impairment. Even if that is not the case, the fact remains that none of the materials provided by Petitioner demonstrate or suggest that the mere passage of time can affect a change in a diagnosed neuropsychological brain impairment.

Further, Petitioner's argument that psychological changes or stressors that he has experienced since Dr. Smalldon's 1996 evaluation demonstrate a reasonable likelihood that there has been a change in the neuropsychological problems or brain impairment diagnosed by Dr. Smalldon is unpersuasive. Dr. Smalldon made remarks in his 1996 report indicating that there is

a difference between an evaluation for psychological problems and an evaluation for *neuro*psychological problems. In noting that he had reviewed a 1996 report by Dr. Sharon Pearson, Dr. Smalldon was careful to point out that she had conducted "a clinical (as opposed to a neuropsychological) evaluation of [Petitioner]." (Doc. # 141-4, at 4.) Dr. Pearson also made remarks in her 1996 report differentiating between the neuropsychological evaluation that Dr. Smalldon had conducted and the evaluation that she had conducted. (Doc. # 141-7, at 12-13.) Accordingly, arguments suggesting that Petitioner is a psychologically different individual than he was when Dr. Smalldon conducted a neuropsychological evaluation of him in 1996 are speculative and insufficient to demonstrate that there is reasonable likelihood that there has been a change in Petitioner's neuropsychological brain impairment diagnosed by Dr. Smalldon in 1996.

Petitioner's argument that funds for an updated neuropsychological evaluation are reasonably necessary for him to make a case for clemency is belied by the Ohio Adult Parole Authority's clemency report. There, the Ohio Adult Parole Authority found "that there was no manifest injustice in this case and that the aggravating circumstances presented in both the written materials and at the Clemency Hearing outweigh any mitigation that might have been presented, *even if John Fautenberry was tested and found to suffer from the presence of Organic Brain Syndrome*." (Doc. # 142, at 10 (emphasis added).)

Also falling short is Petitioner's argument that an updated neuropsychological evaluation is necessary to enable him to rebut repeated assertions by the State during the clemency hearing that Petitioner did not suffer brain impairment or other mental illness. Petitioner argues that he did not participate in his clemency hearing because he did not have funding for an updated

9

neuropsychological evaluation. But the 1996 neuropsychological evaluation conducted by Dr. Smalldon, and to a lesser degree the 1996 clinical evaluation conducted by Dr. Pearson, could have been used to rebut any arguments by the state trial prosecutor and state attorney general's office that Petitioner did not suffer from brain impairment. Those arguments went unrebutted–not because Petitioner did not have funding for an updated neuropsychological evaluation–but because Petitioner did not participate in his own clemency hearing armed with the 1996 neuropsychological evaluation that he did have. If he had, he could have relied on the 1996 evaluation in which Dr. Smalldon stated in no uncertain terms that Petitioner "has at least mild functional brain impairment," that Petitioner had "possible damage to the left temporal lobe, and bilateral damage to the parietal area," and that test results strongly suggested "at least some degree of right hemisphere impairment"–in short, that Petitioner "is brain impaired." (Doc. # 141-4, at 14-16.)

For the foregoing reasons, the Court is unable to find that the funds sought by Petitioner for an updated neuropsychological evaluation are "reasonably necessary" in order for him to make a case for clemency. None of the arguments advanced by Petitioner are sufficient to make a prima facie showing that some material information would be developed as a part of any new neuropsychological evaluation sufficient to assist Petitioner in making a case for clemency. Stated another way, Petitioner has not demonstrated that the mere passage of time is likely to have caused a change in his neuropsychological brain impairment that resulted from earlier head injuries sufficient to create a reasonable likelihood that a new neuropsychological evaluation will reveal anything new. The record before this Court demonstrates that Petitioner suffers from a mild brain impairment stemming from earlier head injuries, not a mental illness that *could*

worsen with the passage of time. According to Dr. Smalldon, Petitioner's brain impairment contributes to Petitioner's impulsivity and poor judgment. Even if those attributes could worsen with the passage of time, this Court cannot discern how that fact would be of assistance to Petitioner in demonstrating that he is entitled to clemency.

In so holding, the Court reiterates that the significance placed by this country's criminal justice system on executive clemency, especially in death penalty cases, is not lost on this Court. And in death penalty cases, this Court always prefers to err on the side of gathering too much information rather than too little. That said, this Court's authority to approve funds for an indigent prisoner seeking to challenge his state death sentence *is* constrained by a showing that the funds are reasonably necessary. The Court is constrained to find that that showing has not been made in this case. Having determined that the funds requested by Petitioner to retain the services of Dr. Gelbort are not reasonably necessary, the Court need not resolve the issue of whether 18 U.S.C. § 3599(f) authorizes the expenditure of funds that are otherwise "reasonably necessary" for pursuit of state clemency proceedings.

For the foregoing reasons, Petitioner's renewed motion for funds and request for a stay of execution (Doc. # 141) are **DENIED**.

**IT IS SO ORDERED.**

                                         **s/ James L. Graham**
                                         **JAMES L. GRAHAM**
                                         **United States District Judge**

DATE: July 11, 2009